OI LAN LEE, Plaintiff-Appellant,

v.

DISTRICT DIRECTOR OF the IMMIGRATION AND NATURALIZATION SERVICE AT LOS ANGELES, CALIFORNIA, Defendant-Appellee.

No. 76–2755.

United States Court of Appeals, Ninth Circuit.

March 21, 1978.

Rehearing Denied April 20, 1978.

Thomas N. Saldin, Marina Del Rey, Cal., for plaintiff-appellant.

J. Mark Waxman, Asst. U. S. Atty., Los Angeles, Cal., for defendant-appellee.

Before TRASK and KENNEDY, Circuit Judges, and THOMPSON,* District Judge.

KENNEDY, Circuit Judge:

On February 11, 1972, Oi Lan Lee, a permanent resident alien, filed a visa petition with the Immigration and Naturaliza-

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

tion Service (I&NS), averring that one Sam Lee was her natural son. The petitioner asked that Sam Lee be accorded second preference status. 8 U.S.C. § 1153(a)(2). The I&NS notified appellant on May 11, 1972 that her petition had been approved subject to proof of the compatibility of her blood type with that of Sam Lee. Results of blood tests were submitted to the I&NS, and based on this report the district director informed Oi Lan Lee that he intended to revoke conditional approval of the visa petition. After appellant supplemented the record with briefs and rebuttal, the district director determined that she had failed to meet her burden of proof and revoked approval of the visa petition.

Appellant appealed the district director's decision to the Board of Immigration Appeals ("Board" or "BIA"). The Board dismissed the appeal. In the district court appellant sought a declaration that appellee had abused his discretion in denying a visa petition filed by the appellant on behalf of her son and a de novo hearing to determine whether her son should be accorded second preference status. The district court denied the requested relief and this appeal followed. We affirm.

The district director had before him evidence of blood types and medical testimony which conclusively proved that Sam Lee could not have been the natural son of Oi Lan Lee and her husband, who had been listed as the child's father on Sam Lee's birth certificate. Both had type O blood and their putative son had blood type AB. Appellant did not, and does not here, contest the district director's conclusion in this regard. However, she submitted an affidavit stating that Sam Lee was fathered by another man whose blood type is unknown and who is now deceased, as well as affidavits from persons claiming personal knowledge that appellant brought Sam Lee home as an infant from a maternity hospital and raised him as her own child.

The district director also considered the testimony of two doctors, one of whom is a recognized expert in blood grouping and analysis. The doctors were agreed that it

was impossible for Oi Lan Lee and her husband to have a child with type AB blood. The blood grouping expert stated that there was, however, an extremely rare and unlikely possibility that if the blood type of the father were AB, a type O mother, such as appellant, could give birth to an AB child.

In reviewing the denial of preference classification, the district court was limited to determining whether or not the district director had abused his discretion. The district director must be found to have abused his discretion in this matter if his decision was based on an improper understanding of the law, or if there is no evidence to support the decision. *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir. 1971); *Loza-Bedoya v. Immigration and Naturalization Service*, 410 F.2d 343, 346 (9th Cir. 1969). Appellant argues that the district director acted contrary to law in considering as evidence blood test results that did not definitely exclude the claimed relationship between Oi Lan Lee and Sam Lee, and that the decision to deny the petition is not supported by the evidence. For the reasons stated below we reject both contentions.

To support her position that it was not proper for the district director to consider the blood test data, appellant cites *In re L____ F____ F____*, 5 I. & N. Dec. 149 (BIA 1953), wherein the BIA stated: "It is essential that we make is [*sic*] clear that only where definite exclusion of paternity is established shall the test be considered to be evidence." *Id.* at 157. The holding of that case is that when the claimed relationship is proved to be impossible by the results of properly conducted blood tests, the test results are to be deemed conclusive in I&NS proceedings. This holding has subsequently been codified in 8 C.F.R. § 204.2(c)(8) (1977). *See Et Min Ng v. Brownell*, 258 F.2d 304, 308 (9th Cir. 1958); *United States ex rel. Lee Kum Hoy v. Shaughnessy*, 237 F.2d 307, 309 (2d Cir. 1956), *rev'd on other grounds sub nom. United States ex rel. Lee Kum Hoy v. Murff*, 355 U.S. 169, 78 S.Ct. 203, 2 L.Ed.2d

177 (1957). That regulation allows the district director to require blood tests to be made whenever preference classification is requested on the basis of blood relationship, and requires the district director to withdraw conditional approval of a visa petition when blood test data conclusively precludes the claimed relationship. The regulation does not specify, however, what weight may be given to blood test data which is not conclusive. The BIA case cited by appellants grappled with the problem of the evidentiary value of blood test data prior to there having been any agency regulation to govern use of such test results. We decline to hold that the I&NS is bound by dicta in that case while a current regulation dealing with the collection and use of blood test data does not explicitly limit the extent to which such evidence may be considered by the district director in exercising his statutory discretion to revoke approval of visa petitions.[1]

If the district director departed from previous I&NS policy in considering blood test data that is less than absolutely conclusive as to exclusion of blood relationship, the departure was a minor one since the test results in this case were all but conclusive.[2] Only an extremely rare exception to the general rules of blood type inheritance would have made it possible for Sam Lee to have been Oi Lan Lee's son. This circuit has deemed it important that the Board "have the freedom to modify existing requirements or fashion new ones provided only that some rational basis exists for such change." *Santos v. Immigration and Naturalization Service*, 375 F.2d 262 (9th Cir. 1967); *see Asimakopoulos v. Immigration and Naturalization Service*, 445 F.2d 1362 (9th Cir. 1971). It is particularly appropriate to allow the Board flexibility with respect to admissibility of evidence, an area in which administrative discretion has traditionally been allowed much leeway.[3]

1. Section 1155 of title 8 states that approval of a visa petition may be revoked for "good and sufficient cause. . . ."

2. It is not at all clear that there has been a departure from actual I&NS policy in considering the test results bearing on this case, since it appears that it has generally been considered impossible for a type O parent to produce a type AB child. *See* C. McCormick, Evidence § 178, at 378–79 (1954); Larson, Blood Test Exclusion Procedures in Paternity Litigation: The Uniform Acts and Beyond, 13 J.Fam.L. 713, 723 (1974). *But see* Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam. L.Q. 247, 263–65 (1976) (listing AB phenotype as excluding parentage by O phenotype but referring to an "extremely rare genetic type called cis-AB" which makes it possible for an O person to be the parent of an AB child). Moreover, though the biological certainty with which the ABO system can exclude parentage has been thought to be over 99.99% (presumably this figure does not account for the cis-AB phenomenon referred to above), it has been argued that the statistical *legal* certainty of being correct when biological data excludes parentage is less because selectivity factors make it more likely that the biological exceptions will be over-represented in the disputes which reach the courts. Ross, The Value of Blood Tests as Evidence in Paternity Cases, 71 Harv.L.Rev. 466 (1958).

Every statistic arising from a scientific determination is tacitly or explicitly qualified by an uncertainty factor. It is important to recognize that certainty is a matter of degree.

3. Courts have been increasingly willing to admit evidence of blood type even when the results of such tests do not conclusively exclude parentage. *See United States v. Kearney*, 136 U.S.App.D.C. 328, 420 F.2d 170, 171 & n.1 (D.C.Cir.1969). The trend is illustrated by the difference between the use of such evidence permitted by the Uniform Act on Paternity, approved in 1960, and that allowed by the Uniform Parentage Act which was approved in 1973:

If the experts conclude that the blood tests show the possibility of the alleged father's paternity, admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type.

Uniform Act on Paternity § 10;

Evidence relating to paternity may include

. . .

(3) blood test results, weighted in accordance with evidence, if available, of the statistical probability of the alleged father's paternity . . ..

Uniform Parentage Act § 12.

Moreover, as this case was before an administrative body and was heard by an official who is familiar with the probative value of blood test data, admission of such evidence poses no danger of misleading a jury. *See* H. Clark, Jr., Law of Domestic Relations 170 (1968).

As to the sufficiency of the evidence, we find that there is adequate evidence to support the district director's decision to deny the petition. The blood test data cast sufficient doubt on appellant's claimed kinship with Sam Lee to shift the burden to her to provide countervailing evidence. *See Wong Kwok Sui v. Boyd*, 285 F.2d 572, 575 (9th Cir. 1960). The district director did not abuse his discretion in determining that appellant's self-serving affidavit and the affidavits of her daughter and friend did not meet this burden.

AFFIRMED.