**HONG KONG T.V. VIDEO PROGRAM, INC., Plaintiff,**

v.

**David N. ILCHERT, District Director, Immigration and Naturalization Service, Defendant.**

**No. C–87–2062–WWS.**

United States District Court, N.D. California.

March 4, 1988.

Martin J. Lawler, Lawler & Lawler, San Francisco, Cal., for plaintiff.

Susan L. Kamlet, Sp. Asst. U.S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

On September 19, 1985, plaintiff Hong Kong T.V. Video Program, Inc., submitted a visa petition to the Immigration and Naturalization Service ("INS") to classify See Soo Chuan ("beneficiary") as a temporary worker of "distinguished merit and ability" pursuant to section 101(a)(15)(H)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101(a)(15)(H)(i). The visa would enable the beneficiary to work as the plaintiff's president and chief executive officer.

The INS denied the petition on the grounds that a president and chief execu-

tive officer is not a member of a profession, that the beneficiary was not a professional because he did not have a university degree, that the person holding the position of president and chief executive officer of plaintiff was not required to be preeminent, and that the beneficiary was not preeminent in his field. The Administrative Appeals Unit ("AAU") dismissed plaintiff's appeal on July 8, 1986.

On April 30, 1987, plaintiff filed this action in federal court, seeking a declaration that the INS's denial of the petition was an abuse of discretion. Plaintiff moved for summary judgment, and defendant filed a cross-motion for summary judgment. A hearing on the motions was held on October 2, 1987. At the hearing, the Court stated that on the record as it then stood, the INS's denial appeared to be arbitrary and capricious and not supported by substantial evidence. However, the Court deferred ruling on the motions and gave the INS an opportunity to show cause why the plaintiff's nonimmigrant visa petition on behalf of the beneficiary should not be granted. The purpose of the deferral was to allow the INS to reconsider its decision.

The INS reopened plaintiff's visa petition proceedings for consideration of the factors set forth by the Court on the record and on December 29, 1987, issued a revised decision which again dismissed plaintiff's appeal and denied plaintiff's visa petition. That decision is now before the Court on the parties' previously filed and deferred cross-motions for summary judgment.

FACTS

Plaintiff, a California corporation, imports and distributes motion picture and drama series foreign language video cassettes in Cantonese, Mandarin, Vietnamese, Cambodian, Thai, Korean, and Spanish languages. It is the largest Asian language video cassette distributor in the United States. It employs over seventy United States workers and has gross annual sales revenues of over eight million dollars.

Plaintiff seeks to employ the beneficiary as its president and chief executive officer. The beneficiary has twenty years of experience in business including temporary chief executive officer and president of plaintiff from 1981 to the present; special business advisor at Lumistar International Ltd. in Hong Kong from 1979 to the present; commission agent and coordinator for Lumistar International (Canada) Ltd. in Ontario from 1977 to 1980; joint venture in Dek's Corporation, an import/export business in Singapore from 1971 to 1976; sales manager with Star Trade Electronics Ltd. from 1969 to 1971; sales representative at Bright Office Equipment from 1964 to 1966; sales representative at Hageneyer Trading Co. Pte. Ltd. in Singapore from 1966 to 1969; sales executive with NCR Singapore, 1967–68; and special accounts sales representative for Olivetti in Singapore from 1967 to 1968.

As plaintiff's president, the beneficiary oversees monthly operating expenses of $150,000; controls a standard inventory of $500,000; is responsible for corporate, financial planning, marketing, and promotional strategy; negotiates contracts with United States licensees and Hong Kong HKTVB; supervises legal actions against video "pirates"; works on videotape anti-pirate technology; and makes high level decisions involving technical, legal and fiscal matters, capital improvements, and copyright infringement.

In support of the visa petition, plaintiff submitted a report from Oren Harari, a professor at McLaren College of Business, University of San Francisco. Professor Harari evaluates the professional experiences of students to determine whether their work experience may be translated into university credit. He found that the beneficiary was operating at a senior executive level of management and that his position, as president and chief executive officer, normally required an MBA. He also concluded that the beneficiary's record was *"far* more superior and impressive than the records which are ordinarily granted graduate credit" and that the beneficiary's work experience was equivalent to the content of a typical MBA program.

Professor Harari stated that the beneficiary could *teach* university level courses in Business Law (domestic and international,

customs, copyright, trade, litigation), International Business (banking and currency exchange, capital budgeting, portfolio analysis, international strategic management and marketing), and Marketing Management (strategy, promotion, advertising, pricing, distribution, subcontracting, brokering and sales). He also stated that the beneficiary's impressive and extensive experience, permitted him to be a guest lecturer in MBA courses dealing with marketing, sales, finance, operation, law, and personnel relations.

DISCUSSION

A. *Standard of Review*

 The Court reviews an administrative denial of a visa petition for abuse of discretion. *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 768 (9th Cir.1985). If a decision is based on an improper understanding of the law, or if it is not supported by substantial evidence, the INS has abused its discretion. *Lee v. INS*, 573 F.2d 592, 594 (9th Cir.1978); *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir. 1971). Judicial relief may also be warranted if it affirmatively appears that the application was turned down for a reason outside the contemplation of Congress. *Kaloudis v. Shaughnessy*, 180 F.2d 489 (2d Cir.1950); *see also Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957).

Section 101(a)(15)(H)(i) permits "an alien having a residence in a foreign country which he has no intention of abandoning ... who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability" to obtain an H–1 nonimmigrant visa.

 The distinguished merit and ability test under this statute involves a two-step assessment. First, a person must occupy a position classifiable as a profession within the meaning of section 101(a)(32) to be classifiable as an alien of distinguished merit and ability. Secondly, the person must herself be a professional. *Matter of Gen. Atomic Co.*, 17 I. & N. Dec. 537 (Comm.1980); *Matter of Essex Cryogenics*

*Indus., Inc.*, 14 I. & N.Dec. 196 (Dep.Assoc.Comm.1972). Alternatively, aliens of prominence, renown, or preeminence in their field may be classified as aliens of distinguished merit and ability. *Matter of Shaw*, 11 I. & N.Dec. 277 (D.D.1965).

B. *The Occupation of President as a Profession*

In the December 29, 1987 dismissal of plaintiff's appeal, the INS concluded that the beneficiary's position, president and chief executive officer of a multi-million dollar company, was not a profession. The INS stated:

> Absent actual evidence a specific academic degree is necessary to perform the beneficiary's duties as a company president and chief executive officer and is, in fact, an industry standard for that position, it may not be concluded that the proposed employment is professional employment within the meaning of section 101(a)(32).

Decision of the AAU at 4 (Dec. 29, 1987). The INS concluded that since a president is a type of business manager and only forty percent of business managers have academic degrees, the occupation of president does not require a degree and therefore is not a profession.

 The INS assumes that in order for an occupation to be a profession under section 101(a)(32), entrance into that occupation must, under the industry's standards, require at least a baccalaureate degree.

> Examination of the occupations named in section 101(a)(32) of the Act indicates the following characteristics common to all: (1) recognition as a member of those professions normally requires the successful completion of a specified course of education on the college or university level, culminating in the attainment of a specific type of degree or diploma; and (2) the attainment of such a degree or diploma is usually the minimum requirement for entry into those occupations.

*Matter of Asuncion*, 11 I. & N. Dec. 660 (R.C.1966). In this case the INS maintains,

therefore, that only occupations which have a degree requirement may be professions under 8 U.S.C. § 1011(a)(32). *See Matter of Huckenbeck,* 13 I. & N.Dec. 118 (R.C. 1969); *Matter of Ahmed,* 12 I. & N.Dec. 498 (R.C.1967).

Section 101(a)(32) of the Act states:

The term "profession" *shall include but not be limited to* architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries.

8 U.S.C. § 1011(a)(32). (emphasis added) Thus the statute specifically states that the term "profession" is not limited to the occupations enumerated. The fact that certain professions are listed which usually require academic specialization as an entry level qualification does not preclude other kinds of professions or endeavors from being treated as professions within the meaning of subsection 32.

Subsection 32 covers a wide spectrum of "professions." It includes architects, engineers, physicians, surgeons and elementary teachers. Each listed profession requires different levels and types of higher education. Certainly the academic qualifications for an elementary school teacher cannot be considered equivalent to those of a surgeon or physician. Therefore, Congress clearly intended to permit a broad spectrum of occupations or positions with varying educational requirements to be treated as professions.

■ Since the statute is open-ended and encompasses occupations requiring varying levels of academic training, its text does not support the INS's conclusion that, to qualify as a profession, an occupation must require at least a baccalaureate degree.

Moreover, the INS itself has not consistently required a degree as a prerequisite to classifying occupations as professions. *See Matter of Sun,* 12 I. & N.Dec. 535 (Reg. Comm.1967). In *Matter of Sun,* the INS held that the vocation of hotel manager is a profession based on the complexity of the duties involved, not the existence of a degree. *Id.* at 536. The INS concluded that the complex duties of personnel administration, establishing performance standards, allocating funds, planning budgets, authorizing expenditures, delegating authority, controlling and supervising performance of personnel, and insuring efficient and profitable operation of the hotel raised the occupation of hotel manager to a profession. *Id.* The INS noted that as applied to the particular petitioner his degree supported his status as a professional. However, the INS did not consider the manager's degree in holding the occupation of hotel manager to be a profession. *Id.*

■ The president of a multi-million dollar corporation, such as the plaintiff, performs all the duties performed by the hotel manager in *Matter of Sun* and numerous other duties including determining legal strategies and evaluating technical data. Therefore, like the hotel manager, the position of company president may be considered a profession based on the complexity of the duties alone.

The INS's determination in this case that the position of president and chief executive officer is not a profession simply because it does not require an academic degree is based on an erroneous interpretation of the statute and is in conflict with its own prior interpretation of the statute.

For support of its determination, the INS relies on the *Dictionary of Occupational Titles,* (4th ed. 1977). The *Dictionary* lists the occupation of president (DOT code 189.-117–026) under the group of miscellaneous managers and officials not classified elsewhere. The classifications in the *Dictionary* include both professional and non-professional occupations and the locations do not purport to classify on the basis of whether an occupation is a profession. In any event president is listed in the *Dictionary* under the general heading of professional, technical and managerial occupations. Its worker function code, 117, which describes the responsibility level and functions of an occupation, is identical to that of a corporate lawyer (110.117–022), a patent lawyer (110.117–026), a hotel manager (187.117–038), and numerous other occupations which are classified as professions. Therefore, the location of the listing of

president in the *Dictionary of Occupational Titles* contradicts rather than supports the INS's conclusion that president is not a profession.

Accordingly, the INS's determination that the position of president and chief executive officer is not a profession is arbitrary and capricious and unsupported by substantial evidence.

### C. Classifying the beneficiary as a professional

On the second step of the distinguished merit and ability test under § 101(a)(15)(H)(i), the INS concluded that the beneficiary was not a professional since he did not have at least a baccalaureate degree or its equivalent. As previously stated, a degree requirement is not a prerequisite to classifying an occupation as a profession. Similarly, a person does not necessarily have to possess a degree to qualify as a professional under the statute. A university degree or its equivalent may demonstrate that the person is a member of a profession and a professional, but is not necessarily required. *See Matter of Retino*, 13 I. & N.Dec. 286 (R.C.1969); *Matter of Che*, 12 I. & N. 146 (D.D.1967).

The INS concluded that the beneficiary had neither a university degree nor its equivalent. While the beneficiary does not have an academic degree, substantial evidence supports the conclusion that he has the equivalent of a degree.

Professor Harari's opinion is the only evidence concerning the beneficiary's educational status. Professor Harari concluded that the beneficiary had at least the equivalent of an MBA. The INS did not question Professor Harari's qualifications to present this expert opinion during the initial determination, the first appeal or the Court's October 2, 1987 hearing. Nor has the INS presented any evidence to contradict Professor Harari's testimony.

In its December 29, 1987 decision, the INS disregarded what it called Professor Harari's "allegedly advisory" opinion principally because he failed to specify "which aspects of the beneficiary's work experience may be equated to which courses and at which level." Decision at 5. However, after extensively discussing the beneficiary's past and present work experiences, Professor Harari specifically said that the beneficiary could "*teach* university courses in: Business Law (domestic and international, customs, copyright, trade, litigation), International Business (banking and currency exchange, capital budgeting, portfolio analysis …) and Market Management courses (strategy, promotion, advertising, …)," and be a guest lecturer in MBA courses covering marketing, sales, finance, operations, law, and personnel relations. Supplemental Administrative Record at 64. Obviously, if the beneficiary's experiences permit him to teach a course, those same experiences may be equated with the specific enumerated course he is qualified to teach.

The INS determination that the beneficiary is not a professional because he lacks the equivalent of a university degree is, therefore, arbitrary and capricious and unsupported by substantial evidence.

In view of the foregoing deposition, it is unnecessary to consider whether the beneficiary may qualify on the basis of preeminence.

For the previously stated reasons, the INS's denial of the petition was an abuse of discretion. Plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. Defendant is ordered to issue the visa petition as requested.

IT IS SO ORDERED.