# MATTER OF CARON INTERNATIONAL, INC.

## In Visa Petition Proceedings

## LIN 88 144 0002

### Decided by Commissioner on October 28, 1988

(1) In order to establish a person has preeminence in business, a petitioner must demonstrate that the person has skills and recognition in business substantially above that ordinarily encountered. The fact that a beneficiary is well known for achievements in his or her field is an important aspect of preeminence.

(2) Not every person who owns or manages a business or holds a high position in a business is considered preeminent. Success or outstanding performance in business alone is not the same as preeminence.

(3) General managerial occupations such as those of vice-president are normally *not* considered to be professional endeavors requiring specific academic degrees. A manager is not considered to be a member of the professions unless he or she is qualified for, and intends to work in, a professional occupation requiring the attainment of such a degree.

(4) Certain occupations may be in transition from nonprofessional to professional status. In such cases, employers may be able to establish a position is professional in nature by demonstrating that the higher standard of a specific baccalaureate-level degree has been consistently required for the more complex positions within their organizations.

(5) Substantial academic course work in a professional field combined with professional experience and achievement may be considered equivalent to a bachelor's degree. While there are a number of colleges and universities in the United States which give credit towards a degree based on experience, none will grant a baccalaureate degree based on a person's experience alone.

(6) The Immigration and Naturalization Service may, in its discretion, use as advisory opinions statements from universities, professional organizations, or other sources submitted in evidence as expert testimony. However, where an opinion is not in accord with other information or is in any way questionable, the Service is not required to accept or may give less weight to that evidence.

ON BEHALF OF PETITIONER: Joseph Minsky
Minsky, Feiertag, McCormick & Hallagan
122 South Michigan Avenue, Suite 1800
Chicago, Illinois 60603

This is an appeal from the adverse decision of the director, Northern Regional Service Center. The appeal will be sustained.

The petitioner is a manufacturer and dyer of hand knitting and industrial yarns. It seeks to classify the beneficiary as a nonimmigrant of distinguished merit and ability pursuant to section 101(a)(15)(H)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(H)(i) (1982), based on its intent to employ him as its vice-president of manufacturing.

The director determined the petitioner had failed to establish that the proposed position is within the professions or requires a person of distinguished merit and ability. The director also found the petitioner had failed to establish that the beneficiary has at least a bachelor's degree or its equivalent or that he is preeminent in his field of endeavor.

On appeal, counsel asserts the proposed position is professional, and the beneficiary has attained professional status even though he does not have a bachelor's degree. Counsel also asserts the beneficiary is preeminent in the field of textile manufacturing.

As noted by the director, distinguished merit and ability may be established in either of two ways. Persons classifiable as professionals based on their academic credentials within the meaning of section 101(a)(32) of the Act are classifiable as aliens of distinguished merit and ability. *Matter of Essex Cryogenics Industries, Inc.*, 14 I&N Dec. 196 (D.A.C. 1972). *Matter of General Atomic Company*, 17 I&N Dec. 532 (Comm. 1980). Also, aliens of prominence, renown, or preeminence in their field of endeavor are classifiable as aliens of distinguished merit and ability. *Matter of Shaw*, 11 I&N Dec. 277 (D.D. 1965).

In 1970, the Immigration and Nationality Act was amended to permit the temporary entry to the United States of "H-1" nonimmigrants to perform services which are either temporary or permanent in nature. The House Committee Report which accompanied the legislation, H.R. Rep. No. 851, 91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News 2750, 2752-53, stated:

> Distinguished merit and ability implies a degree of skill and recognition substantially above that ordinarily encountered to the extent that a person so described is *prominent* or *has a high level of education* in his field of endeavor. (Emphasis added.)

Careful review of the record of proceeding in the light of the above administrative case law and legislative history reflects the petitioner has not established the beneficiary is eligible for "H-1" classification based on membership in the professions. However, the petitioner has established the beneficiary is eligible for this classification based on prominence or preeminence as a business executive. Similarly, the petitioner has not established that the proposed position is within the professions but has established that

the proposed position requires a prominent or preeminent business executive.

## MEANING OF PROFESSIONAL POSITION

The Supreme Court interpreted the term "profession" in *United States v. Laws*, 163 U.S. 258 (1896), in which it adopted the following meaning of "profession" from the *Century Dictionary*:

The word implies professed attainments in special knowledge, as distinguished from mere skill, a practical dealing with affairs, as distinguished from mere study or investigation; and an application of such knowledge to uses for others, as a vocation, as distinguished from its pursuit for its own purposes.

*Id.* at 266. The Court concluded that a "chemist who places his knowledge acquired from a study of the science to the use of others, as he may be employed by them" is "engaged in the practice of a profession." *Id.*

The Supreme Court's interpretation of the term "profession" as requiring knowledge or learning, as opposed to mere skill, was affirmed in subsequent case law. *See Pizarro v. District Director of United States I.&N. Serv.*, 415 F.2d 481 (9th Cir. 1969); *Javier v. Immigration & Naturalization Service*, 335 F. Supp. 1391 (N.D. Ill. 1971); *Buckley v. Gibney*, 332 F. Supp. 790 (S.D.N.Y. 1971); *Yau v. District Director of U.S. Immigration & Nat. Serv.*, 293 F. Supp. 717 (C.D. Cal. 1968); *Abbott v. United States*, 151 F. Supp. 929 (Ct. Cl. 1957).

The term "profession" is defined by example in section 101(a)(32) of the Act. That section states:

The term "profession" shall include but not be limited to architects, engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools, colleges, academies, or seminaries.

The clearest common denominator for professional standing is at least a baccalaureate degree awarded for academic study in a specific discipline or narrow range of disciplines. This requirement is explained in numerous Immigration and Naturalization Service precedent decisions dating back to 1966. *E.g., Matter of Portugues Do Atlantico Information Bureau, Inc.*, 19 I&N Dec. 194 (Comm. 1984); *Matter of Ahmed*, 12 I&N Dec. 498 (R.C. 1967); *Matter of Palanky*, 12 I&N Dec. 66 (R.C. 1966); *Matter of Shin*, 11 I&N Dec. 686 (D.D. 1966). It is also well established that some professions (for example, those of physicians, surgeons, psychologists, and librarians) require advanced degrees. *Matter of Pizarro*, 12 I&N Dec. 537 (R.C. 1967); *Matter of Shih*, 11 I&N Dec. 847 (D.D. 1966).

For a job to be considered within the professions, it is not enough that a petitioner desires to employ a person with a degree. The

degree requirement must be an industry standard in parallel positions among similar firms and institutions. In addition, it must be shown the employer normally imposes this requirement.

The referenced definition of "profession" cited in *United States* v. *Laws, supra*, recognized that "as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name" profession. *Id.* at 266. The Service also acknowledged this fact in *Matter of Shin, supra*, in stating that "the vocations included in the term 'profession' in our modern highly industrialized society are constantly expanding, consistent with the greater knowledge and specialized training that such a society demands." *Id.* at 687. It is noteworthy that in *Matter of Panganiban*, 13 I&N Dec. 581 (D.A.C. 1970); and *Matter of Michael Hertz Associates*, 19 I&N Dec. 558 (Comm. 1988), the Service accorded professional recognition to occupations it had previously held to be nonprofessional.

The Service also recognizes that some occupations may be in transition from nonprofessional to professional status. In these transitional occupations, it may be possible for some employers to establish the professional nature of positions by demonstrating that they have consistently required the higher standard of a specific baccalaureate or advanced degree for the more complex positions within their organizations.

## BENEFICIARY'S PROPOSED POSITION IS NOT PROFESSIONAL

In this proceeding, the petitioner has failed to establish that the proposed position of vice-president of manufacturing in its organization actually requires at least a specific baccalaureate-level academic degree. In fact, general managerial occupations such as those of vice-president are normally *not* considered to be professional endeavors requiring specific academic degrees. A manager is not considered to be a member of the professions unless he or she is qualified for, and intends to work in, a professional occupation requiring the attainment of such a degree.

*Matter of Ling*, 13 I&N Dec. 35 (R.C. 1968), holds that "business administration" is a general term including both professional and nonprofessional activities. The Department of Labor's *Occupational Outlook Handbook* (1988–89) gives, on page 26, the following information about the qualifications and training of general managers and top executives:

The educational background of managers and top executives varies as widely as the nature of their diverse responsibilities. Most general managers and top executives have a bachelor's degree in liberal arts or business administration. Their major often is related to the departments they direct—for example, accounting for a general manager of finance or computer science for a general manager of data processing. Graduate and professional degrees are common. Many managers in administrative, marketing, financial, and manufacturing activities have a master's degree in business administration. Managers in highly technical manufacturing and research activities often have a master's or doctoral degree in an engineering or scientific discipline . . . . In some industries, such as retail trade, competent individuals without a college degree may become general managers.

While the recent edition of the *Occupational Outlook Handbook* reflects that higher education is becoming increasingly prevalent among managers and executives, it does not establish that at least a baccalaureate-level degree in a specific major or even a narrow range of majors is *required* for all or most occupations within this broad field. Further, mere first-line supervision of ordinary production work or very general management activities do not qualify as professional.

On appeal, counsel submits three letters from universities which he asserts demonstrate that the position of vice-president of manufacturing in the textile industry requires a person with a baccalaureate degree. Additionally, counsel submits a letter from the American Yarn Spinners Association, Inc. in support of this proposition.

This Service may, in its discretion, use as advisory opinions statements from universities, professional organizations, or other sources submitted in evidence as expert testimony. Nevertheless, since the Service is responsible for making the final determination regarding a beneficiary's eligibility for the benefit sought, where an opinion is not in accord with other information or is in any way questionable, the Service is not required to accept or may give less weight to that evidence.

The above letters do not establish the proposed position of vice-president of manufacturing with this petitioner is within the professions. One of the university letters admits, "To proceed without formal textile education is definitely possible, but even more years of manufacturing experience in the field is required." The other two university letters indicate the position of vice-president of manufacturing is "normally filled" by people with college degrees, but this does not mean the degrees are actually necessary. Similarly, the letter from the American Yarn Spinners Association does not, in fact, state a *specific academic degree* is actually the minimum prerequisite for the position of vice-president of manufacturing in the textile industry.

Together, the three university letters allow for a relatively broad range of major fields of study as prerequisites to the position of vice-president of manufacturing, not a specific major or narrow range of majors. The majors cited in the three letters are (1) business or engineering; (2) mechanical engineering, chemical engineering, textile science, textile chemistry, or industrial management; (3) textile management and technology.

Some textile manufacturing firms may be able to establish a need for vice-presidents of manufacturing or other managers with at least baccalaureate-level degrees in one or more of the fields mentioned in the university letters. In this case, counsel asserts the new yarn manufacturing technology requires that the beneficiary have knowledge of the "long-fibre system" and understand the complexities of modern machinery. Counsel also asserts the proposed duties relate to the development of recently installed computerized systems.

However, the record does not demonstrate *specifically* how the proposed duties are so specialized and complex that a university-educated person is actually *necessary*. Nor has the petitioner established the beneficiary would be *personally* involved in unusually complex duties such as training, trouble-shooting complex equipment or systems problems, or negotiating complicated counteracts which would make professional knowledge and background virtually indispensable.

The proposed position, which reports directly to the president, is the top manufacturing position in the company. According to the petitioner's organizational chart, several managers report to this position. The duties of the proposed position do not appear materially different from the general duties normally performed by a vice-president which, as noted above, are usually not considered professional.

The petitioner asserts the last person employed in the proposed position had a B.S. degree from Maine Maritime Academy and extensive experience in the textile industry. As noted by the director, since this degree is not related to the textile industry, the individual's experience is what qualified him for the position. It therefore appears the position can be performed successfully by an experienced person whose education and training are not equal to a baccalaureate degree in a specialized area.

Counsel argues the proposed position is within the professions because the incumbent must supervise managers who have either bachelor's or master's degrees. However, the petitioner has not established the proposed duties involve significant supervision or

quality review over the work of professional employees so as to make the holding of professional credentials mandatory.

According to counsel, positions under the direct supervision of the vice-president of manufacturing are professional, including the chief industrial engineer, the production planning manager, and the corporate purchase manager. Counsel bases his conclusion that these three occupations are within the professions on the fact that they are classified as "professional and kindred" in the *Dictionary of Occupational Titles (4th ed. 1977)* ("DOT").

While industrial engineers are normally considered to be professional, a reference in the DOT is not enough to establish the professional nature of an occupation. The Department of Labor occupational classification system and the DOT categorization of an occupation as professional and kindred or as being within a professional subject field are not directly related to consideration as to whether a position requires a member of the professions as defined in section 101(a)(32) of the Act.

Citing *Matter of Sun*, 12 I&N Dec. 535 (D.D. 1966), counsel asserts that the proposed position is classifiable as professional based on the complexity of its duties and its level of responsibility. Counsel states that in *Matter of Sun* the Service "held that the vocation of hotel manager is a profession based on the complexity of the duties involved, not the existence of a degree." This interpretation, however, takes the conclusion in *Sun* out of context.

*Matter of Sun, supra*, clearly notes the requirement for professional standing of "training gained only by an extended course of specialized instruction and study of at least the baccalaureate level." *Id.* at 536. Although it concludes that the vocation of hotel manager in its more complex form involving certain duties for a large hotel may be considered a profession, it also concludes that "the beneficiary, by virtue of his specialized high-level education in the field of hotel management and his experience in that field is qualified as a member of that profession." *Id. Matter of Sun* is distinguishable from this case because the petitioner here has not demonstrated a specific academic degree is required to perform the proposed occupation.

Finally, counsel also cites *Hong Kong T.V. Video Program, Inc.* v. *Ilchert*, 685 F. Supp. 712 (N.D. Cal. 1988), in support of his assertion that the proposed position is classifiable as professional based on the complexity of its duties and its level of responsibility. As the Service does not consider itself bound by this decision outside of the Northern District of California, it is not necessary to examine the impact of that decision on this case.

## BENEFICIARY'S WORK EXPERIENCE IS NOT EQUIVALENT TO A DEGREE

Counsel argues the beneficiary is a rare person whose work experience qualifies him as a member of the professions. Counsel asserts the beneficiary's certificate in textile dyeing from City and Guilds of London Institute certifies him as a professional dyer, and he has performed services at a professional level for the past 8 years.

It is noted the beneficiary has 24 years of work experience. It is also noted that, according to an evaluation of the beneficiary's foreign education, he has the equivalent of a high school diploma in the United States plus completion of additional high school-level work and 5 semester hours of undergraduate credit.

In several instances, this Service has recognized persons as members of the professions with less than the normally required academic degrees. *Matter of Yaakov,* 13 I&N Dec. 203 (R.C. 1969); *Matter of Arjani,* 12 I&N Dec. 649 (R.C. 1967); *Matter of Bienkowski,* 12 I&N Dec. 17 (D.D. 1966); *Matter of Devnani,* 11 I&N Dec. 800 (Acting D.D. 1966). The cited cases all share factors in common. In these cases, the beneficiaries had *extensive* formal academic education, as well as other professional attainments.

While there are a number of colleges and universities in the United States which now give credit towards a degree based on experience, none will grant a baccalaureate degree based on a person's experience alone. Organizations such as the Council for the Advancement of Experiential Learning and several universities indicate that the substitution of experience for college-level credit is generally based on evaluation of the applicant's research papers and an extensive portfolio by professors who teach that course or based on an examination. Several universities, however, have advised that there is no one-to-one substitution of a certain number of years of experience for a certain amount of college credit.

In *Matter of Portugues Do Atlantico Information Bureau, Inc., supra,* the Service reiterated the proposition that substantial academic course work in a professional field combined with professional experience and achievement may be considered equivalent to a bachelor's degree. The Service rejected the concept that experience is necessarily the same as education or that it may be accepted on parity with academic preparation for the professions.

A combination of education and experience may be considered equivalent to a professional degree, but usually only when a substantial amount of specialized academic course work is combined

with employment and training which are documented as conveying to the employee professional knowledge and competency. Normally, this competency is further demonstrated by professional recognition such as the employee's membership in professional organizations or associations requiring minimum professional standards for admission as a member. Evidence of this nature has not been introduced into this proceeding.

The beneficiary has not completed any apprenticeship. The only advanced education or training he has received is that resulting in his being awarded one certificate in dyeing for study at the community college level.

The positions held by the beneficiary include assistant in a dispatch department, dyer, and employee in a department for yarn spinning, twisting, and finishing. He subsequently became shift supervisor in this department, then department head, and ultimately factory manager. In 1980, he assumed the position of general manager of another company. In 1983, he was promoted to the position of production director of that and a related company.

The record shows the beneficiary has worked his way up to a prominent executive position, but much of his employment was in ordinary production work or first-line supervision of other workers. The record does not demonstrate the beneficiary's employment has conveyed to him the theoretical and practical application of specialized knowledge required at the professional level of an occupation.

The beneficiary is a member of three committees in the Confederation of British Wool Textiles Limited. As indicated later, the beneficiary's membership on these committees is one of the factors considered in making the determination that he is a preeminent business person, but it does not demonstrate he is a member of the professions. This is because the record does not establish that this organization is a professional, as opposed to a trade, organization or that membership in this organization requires at least a specific academic degree or its equivalent.

## BENEFICIARY QUALIFIES FOR "H-1" CLASSIFICATION BASED ON PREEMINENCE

Counsel's assertion that the beneficiary is preeminent in the field of textile manufacturing is supported by the record. While the term "preeminence" was used for "H-1" classification in *Matter of Shaw, supra*, the term "prominent" was used in connection with distinguished merit and ability in the 1970 House Committee Report cited above. The terms "prominent" and "preeminent" are

now used interchangeably to describe aliens of distinguished merit and ability.

Preeminence requires the showing of "paramount rank, dignity, or performance." *Webster's Ninth New Collegiate Dictionary* (Merriam-Webster 1986). *Matter of Shaw, supra,* which relates to an entertainer, contains criteria by which a beneficiary's distinguished merit and ability may be measured. This status may be evaluated through critical reviews, contractual arrangements, and/or remuneration.

Some of the criteria for determining whether a business person is preeminent in his or her field may, of necessity, be somewhat different from those for an entertainer. In order to establish a person has preeminence in business, a petitioner must demonstrate that the person has skills and recognition in business substantially above that ordinarily encountered. *See Matter of Shaw, supra.* Conversely, not every person who owns or manages a business or holds a high position in a business is considered preeminent. Moreover, as pointed out in *Shaw,* the burden of proof to establish eligibility for "H-1" classification on preeminence grounds is upon the petitioner.

There have not been any prior Service precedent decisions formally recognizing preeminent business persons. Nonetheless, there is nothing in law, regulation, or precedent decisions to preclude approval of "H-1" petitions for persons who are preeminent in business.

During the beneficiary's 24 years of work experience in the field of yarn manufacturing in the textile industry, he has worked his way up to a top production management position with a major textile manufacturer where his responsibilities include the management and control of five production units and two plants. The beneficiary also has a significant record of unusual achievement in textile manufacturing.

For example, the beneficiary is a long-standing member of three of the most important committees in the Confederation of British Wool Textiles Limited, namely the Training Counsel, the Quality Management Steering Committee, and the Fibre, Textile, and Clothing Industries Fire Safety Committee. Additionally, several of the beneficiary's peers in the textile industry (one of whom is the Secretary of the Textile Institute) have attested to his preeminence in his field. The record documents that these individuals are "men of distinction and stature within the industry" whose voices are "heard within the major textile groups in the UK . . . and within the major textile educational establishments, such as the Textile Institute."

According to the petitioner, the beneficiary "turned around a company facing a bankruptcy situation, until it is now the largest and most successful textile firm of its kind in Europe." The petitioner states the company for which the beneficiary is employed "was the one that most successfully weathered the storm of overwhelming imports from the Far East, and they did it primarily through the development of new technology." The petitioner also states the beneficiary "was the person responsible for this dramatic success."

This information is corroborated by one of the beneficiary's peers, a managing director of another company, who states that the beneficiary was responsible for his employer's "outstanding increase in production and the highering of quality standards," and the beneficiary "has become pre-eminent in his field with the development of New Tec yarns." He also states that the beneficiary's employer "has become one of the U.K.'s leading producers of acrylic and wool spun yarns for . . . quality, service and fashion and much of the credit for this company's performance is due to . . . [the beneficiary's] work."

The fact that a beneficiary is well known for achievements in his or her field is an important aspect of preeminence. It must be kept in mind that success or outstanding performance in business alone is not the same as preeminence.

The beneficiary in this proceeding is well known in the textile industry. After an unsuccessful search in the United States, a British recruitment consultant for textile firms throughout the world located the beneficiary. According to the consultant, "in no instance was there a candidate who had achieved the success" the beneficiary had achieved. The consultant refers to the beneficiary's recognition by "colleagues, contemporaries and competitors," "the contribution he has made to the industry and the esteem with which others acknowledge his pre-eminence." The consultant asserts further that the beneficiary "is pre-eminent within the industry and represents his company at senior levels whenever his capabilities are needed. His company is known throughout the industry, and . . . [the beneficiary] is known wherever worsted spinning is discussed."

Not only is the beneficiary found to be a preeminent business person, but the proposed position of vice-president of manufacturing with this petition is found to be exceptional nature requiring preeminence in management of textile manufacturing. The record clearly demonstrates that the beneficiary, due to his uncommon ability in the management of textile manufacturing, now holds a

position abroad requiring preeminence, and he has been offered such a position in the United States.

The petitioner, with gross annual sales of approximately $90 million, states that it is the largest manufacturer of yarns for consumer markets in the United States and a growing supplier of industrial yarns. The proposed position, the petitioner's top manufacturing position, is critical for the petitioner's successful performance. The petitioner emphasizes its need for the beneficiary's unusual expertise in order to compete effectively with other firms.

The incumbent of the proposed position would be directly responsible for approximately 725 employees at the petitioner's largest facility located in Rochelle, Illinois, as well as indirectly responsible for the rest of the petitioner's approximately 1,350 employees. Further, the salary of approximately $100,000 per year plus benefits valued at $52,000 offered the incumbent, considered in conjunction with the other factors, supports a finding that the proposed position requires a preeminent business person.

**ORDER:** The appeal is sustained. The decision of the director is withdrawn, and the petition is approved.