**AUGAT, INC., Plaintiff,**

v.

**Gilbert C. TABOR, Director of Eastern Regional Service Center, Immigration & Naturalization Service, Defendant.**

Civ. A. No. 88–1458–S.

United States District Court, D. Massachusetts.

April 12, 1989.

James A.G. Hamilton, Perkins, Smith, Arata & Howard, Boston, Mass., for plaintiff.

Nicholas Theodorou, Asst. U.S. Atty., Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

SKINNER, District Judge.

On November 17, 1986, the plaintiff Augat, Inc. ("Augat") submitted a petition to the Immigration and Naturalization Service ("INS") for a third preference visa pursuant to 8 U.S.C. § 1153(a)(3) for its employee Kevin C. Walker. Augat seeks to have Walker classified as a "member of the professions," within the meaning of §§ 1101(a)(32) and 1153(a)(3) so that he can accept a position as its' Vice President, International.

The INS denied the petition on the grounds that Walker is not a "member of the professions" because he does not possess a baccalaureate degree, and that the position of Vice President for International Operations is not a professional one, because Augat does not require such a degree as a base qualification of its occupant. Augat filed this action requesting a declaration that the denial of the visa petition by the INS was an abuse of discretion, and an order that the visa be issued.[1] The parties have filed cross-motions for summary judgment.

### Undisputed Facts

Augat designs, manufactures and markets a range of electro-mechanical components. The company engages in direct sales, and also markets its products through 16 subsidiaries in the United States and abroad. Augat's sales are in excess of $250 million, $55 million of which derive from its foreign operations. These operations are to be supervised by the International Vice–President, a newly created position which has been offered to Mr. Walker.

Walker has been employed in the electrical and electromechanical component industry from 1965 to the present. Before his employment in Augat's British subsidiary, Walker worked for three British industrial firms, holding positions of progressively greater responsibility in the areas of marketing and management. While he completed a certain amount of coursework in mechanical engineering and business administration in the early 60's and 70's, he does not possess a baccalaureate degree in any discipline.

In 1980, Walker was hired by Augat, Inc. as Vice President and General Manager of its British subsidiary, Augat Ltd. The specifications for this position required a bachelor's degree in management or its equivalent, qualifications which Walker was found to possess.

In 1982, Walker was promoted to Vice President, European Commercial Operations. In this position, he was responsible for all of Augat's European operations. His peers in the corporate hierarchy were the managers of the larger international subsidiaries and the Manager for International Finance and Operations. These positions require a bachelor's degree or its equivalent.

In 1983, Walker attended the annual American Electronics Association/Stanford Executive Institute for Management of High Technology Companies. The program deals with materials at the graduate level, participants all have at least 10 years of business experience, and the majority hold MBA's or an equivalent graduate degree in business.

---

1. The INS has represented that third preference visas are currently available to qualified aliens who filed their applications prior to March 15, 1988. As Walker's petition was filed before that date, should the plaintiff succeed in establishing that Walker is entitled to the preference, he would be entitled to a visa immediately.

Walker was transferred to the United States in 1985, and promoted to his current position of Consulting Vice President, International (temporary). In this position, Walker reports directly to the President and Chief Executive Officer of the company. His former peers report directly to him, and would continue to do so in the proposed new position. Augat now seeks to install Walker as its permanent Vice President for International Operations, and has filed this visa petition to that end.

### Rulings of Law

■■■ A decision of the INS denying a visa petition is entitled to deference from the court, and will not be reversed unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Richards v. INS*, 554 F.2d 1173, 1177 (D.C.Cir.1977). My function when reviewing an agency decision is limited to determining whether the evidence in the administrative record is sufficient to support the conclusion the agency reached. *See, e.g. Occidental Engineering Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985). An abuse of discretion may be found either when there is no substantial evidence to support the agency decision, or when the agency has made its determination based on an improper understanding of the law. *See, e.g., Hong Kong T.V. Video Program, Inc. v. Ilchert*, 685 F.Supp. 712, 715 (N.D. Cal.1988). Further, while the INS has the discretion to develop standards for determining whether an applicant is a member of the professions, when the agency makes a decision which is inconsistent with the agency's own precedent, this may constitute an abuse of discretion. *See, e.g., Occidental Engineering Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985); *Globenet, Inc. v. Attorney General*, No. 88–1261, slip op. at pp. 5–6 (D.D.C. January 10, 1989).

■■■ Section 1153(a)(3) provides for a preference for "qualified immigrants who are members of the professions ... and whose services in the professions ... are sought by an employer in the United States." The term "profession" is defined to "include but not be limited to architects,

engineers, lawyers, physicians, surgeons, and teachers in elementary or secondary schools." 8 U.S.C. § 1101(a)(32). In order to qualify for a third preference on this basis, the position to be filled must be a professional one, and the alien must be classifiable as a "member of the professions" in the field of intended employment. *See, e.g., Globenet, Inc. v. Attorney General*, No. 88–1261 (D.D.C. January 10, 1989). The list of professions in the statute does not purport to be exhaustive, and the INS has developed guidelines for identifying professions other than those enumerated. The agency considers the educational prerequisites of the field as a factor of prime significance. For a field to constitute a profession, the applicant must show there is a general requirement of a prolonged period of specialized instruction or study as a realistic prerequisite to entry. *See, e.g., Occidental Engineering Co. v. INS*, 753 F.2d 766, 767 (9th Cir.1985). The INS has accordingly evolved a standard that a professional position is one which realistically requires the attainment of an education equivalent at least to a baccalaureate degree in the United States. *See, e.g., Matter of Portugues do Atlantico Information Bureau, Inc.*, I.D. #2982 (Comm.1984); *Matter of Bienkowski*, 12 I. & N.Dec. 17 (Comm.1966).

■■■ The agency cites Walker's lack of a formal degree as the basis for its conclusion that he is not a "member of the professions" within the meaning of the statute, and then draws the conclusion that the position of Vice President for International Operations is not a professional one, since Augat desires to fill it with Walker, a nonprofessional. The basic premise and support of the argument is that only persons with baccalaureate degrees can be professionals, and only occupations with absolute degree requirements can be professions. This argument, albeit circular, would have considerable force but for the fact that its premise is not a correct statement of the law. There is no absolute degree requirement, either under the statute or the agency's own prior decisions. The agency's application of such a rule automatically to deny the preference, without considering

other factors is an abuse of discretion. *See, e.g., Globenet, Inc. v. Attorney General,* No. 88–1261 (D.D.C. January 10, 1989); *Hong Kong T.V. Video Program, Inc. v. Ilchert,* 685 F.Supp. 712, 716 (N.D.Cal. 1988); *Matter of Sun,* 12 I. & N.Dec. 535 (1967).

It is not the case that only occupations with absolute degree requirements can be considered professions, within the meaning of the Act. *See, e.g., Globenet, Inc. v. Attorney General,* No. 88–1261 (D.D.C. January 10, 1989); *Hong Kong T.V. Video Program, Inc. v. Ilchert,* 685 F.Supp. 712, 716 (N.D.Cal.1988). While a specific degree requirement is an important factor in determining whether an occupation not enumerated in the statute is a "profession," to use it as an absolute test is erroneous, both under the Act itself, and under the INS's own precedents.

In *Hong Kong Video, supra,* the court held that the INS's decision that the position of President and Chief Executive Officer of the plaintiff company was not a professional one, was an abuse of discretion. The court noted that occupations enumerated in the statute as being professions represent a broad spectrum of positions with varying educational requirements, and therefore the text did not support the agency's assumption that only occupations with degree requirements could be professions. *Hong Kong Video, supra,* 685 F.Supp. 712, 716. Furthermore, the INS itself has not applied an absolute degree requirement as the test of whether an occupation is a profession. The agency has looked instead to whether there is a general requirement of specialized study for the post, coupled with whether the position has complex and discretionary duties normally associated with professional posts. *See, e.g., Matter of Perez,* 12 I. & N.Dec. 701, 702 (1968); *Mindsey v. Ilchert,* No. C–84–6199–SC (N.D.Cal. December 11, 1987) and *Matter of Sun,* 12 I. & N.Dec. 535 (1967), cases finding journalism, fashion design and hotel management to be professions. *Compare, Occidental Engineering Co. v. INS,* 753 F.2d 766 (9th Cir.1985); *Matter of Ho,* 12 I. & N.Dec. 148 (1967); *Matter of Asuncion,* 11 I. & N.Dec. 660 (1967), finding that the occupations of translator and medical technician are not. In *Sun, supra,* there was no suggestion that a degree was a prerequisite to a position as hotel manager. Nevertheless, in that case the occupation was found to be a professional position because of the complexity of the duties involved. These precedents impelled the finding in *Hong Kong Video* that the position of company president was a professional one. "The president of a multi-million dollar corporation, such as the plaintiff, performs all the duties performed by the hotel manager in *Sun,* and numerous other duties including determining legal strategies and evaluating technical data. Therefore, like the hotel manager, the position of company president may be considered a profession based on the complexity of the duties alone." *Hong Kong Video, supra,* 685 F.Supp. 712, 716. The same considerations as were present in *Hong Kong Video* direct a finding that the position of Augat's Vice President for International Operations is a professional one.

As described in plaintiff's uncontroverted submissions, the position of Augat's Vice President, International requires knowledge in a number of administrative and technical areas, including international sales, marketing, manufacturing methods and electrical or mechanical product engineering. The base qualifications are the equivalent of a complete college degree, and 8 to 10 years in product development and marketing in the electronic components industry, with exposure to foreign markets. Responsibilities detailed include "planning, directing and coordinating" Augat's international operations on many fronts. These functions, as defined, require the exercise of considerable discretion and of supervisory authority, through subordinate managers, of between 150 and 170 employees in ten countries. The divisions and subsidiaries under the direct control of the International Vice–President have foreign sales objectives of approximately $45 million per annum.

Plaintiff's experts, Professors Bartlett, Nemitz and McDougall, concur that the position described in a company the size of

Augat, is a professional one, and one for which at least a bachelor's degree in business administration ordinarily would be required.

In addition, the location of Vice President, International in the corporate hierarchy and the fact that it requires supervision of professionals evidences the position's professional character. Its occupant will report directly to the President, the chief operating officer of Augat. Augat personnel under the direct supervision of the vice president, international are uniformly possessed of professional qualifications, and include the manager of finance and administration for the company's international operations and the managers of Augat's 10 largest international subsidiaries. These positions are currently held by individuals who possess 8 to 17 years of experience in the industry, and baccalaureate degrees or the equivalent in their fields. The fact that a position entails the exercise of discretionary supervision of professionals is evidence that the position is itself a professional one. *See e.g., Occidental Engineering Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985) (the argument that editing is a profession because it requires the supervision of journalists, who are professionals, was sound, but inapposite in the case).

There is substantial evidence in the record that Vice President for International Operations in a concern of Augat's size is a professional position, and that it has a general educational requirement of at least a baccalaureate degree or its equivalent. The complexity and demands of the duties and responsibilities involved are at least as great as those for positions which have been determined to be "professions" despite their lack of an absolute degree requirement for entry. *See, e.g., Hong Kong T.V. Video Program, Inc., supra; Matter of Sun, supra.* Defendant has submitted no evidence to counter or discredit the plaintiff's assessments and descriptions of the position. In the absence of such contradictory evidence, the agency was not free to disregard the fact that all of the evidence in the record supports the conclu-sion that the position at issue is a professional one.

The plaintiff concedes that Walker lacks a baccalaureate degree, but contends that his education, training and experience have embued him with knowledge at least equivalent to a degree in international industrial management, and that he is a professional in the field.

As with the determination of whether a given occupation is a "profession", whether an individual is a "member of the professions" is not solely dependent on whether he possesses a bachelor's degree in a relevant field. Such a rule is supported neither by agency precedents, nor a correct reading of the statute. Defendant relies on *Portugues, supra,* to support its assertion that the agency has evolved a rule that knowledge gained through experience can never compensate for the lack of a formal degree, and that such a deficiency is invariably fatal to an individual's claim to be a member of the professions. This is not a correct reading of the decision. In that case, not only did the petitioner lack a formal degree, but the position itself was not a professional one. The argument rejected by the Commissioner in that case was "the proposition that longevity in a particular *non* professional occupation demonstrates a professional level of ability or merit on the part of the incumbent." *Portugues, supra,* at p. 3. (emphasis added). The decision explicitly recognized the need to accommodate "those rare instances where individuals without the normal academic qualifications required, manage, through extraordinary personal ability, to occupy clearly professional positions, usually after completion of virtually all normal coursework required but lacking a corresponding degree." *id.* The application of a degree requirement as an inflexible arbiter of whether an individual is a professional in his field deprives him of the opportunity to demonstrate that an exception to the general degree requirement is warranted. This is arbitrary and an abuse of discretion. *See e.g. Globenet, supra, slip op. at p. 21.*

A case whose facts are markedly similar to this one is *Hong Kong Video, supra.* In

this case, the individual the plaintiff sought to appoint its president and CEO was denied professional status, because he did not have a university degree. The beneficiary had 20 years experience in business, rising from sales representative to acting head of the company. His duties included a wide range of high level discretionary functions, and the plaintiff submitted expert testimony that his credentials and attributes were the equivalent of an MBA. There was substantial evidence in the record to support the conclusion that the beneficiary had the equivalent of a degree, in that there was expert testimony to support this conclusion and none to contradict it. Accordingly, the court held that the INS decision that he was not a professional was an abuse of discretion and ordered the agency to issue the requested visa.

Similarly, in *Globenet, Inc. v. Attorney General*, No. 88-1261 (D.D.C. January 10, 1989), the court held that the INS abused its discretion by wholly ignoring the evidence in the record that the beneficiary's qualifications entitled him to professional status despite his lack of a formal degree. There was substantial evidence in the record that he had successfully occupied professional positions, and had practical knowledge equivalent to a baccalaureate level of education. In response, the INS stated merely that "education could not substitute for experience," and offered no evidence to counter plaintiff's submissions. The court recognized that the exceptions to the degree requirement are rare and narrowly tailored, but held that the INS had erred in simply relying on the lack of degree and failing to make inquiry into whether an exception was warranted.

In his affidavit, Walker details a range of theoretical and practical professional knowledge acquired through on-the-job training, professional seminars and independent reading during his 15 year career before he came to Augat, Ltd in 1980. Plaintiff submitted affidavits of Professors Bartlett, Nemitz and McDougall of the Harvard Business School, Babson College and Boston University School of Management, respectively. These experts each interviewed Mr. Walker, evaluated his educational and employment background, and examined various relevant studies and publications authored by him. On this basis, each offered the opinion that Mr. Walker possesses professional skill and knowledge in the area of international management at least equivalent to a bachelor's degree in the field. In addition, plaintiff has submitted evidence that Walker has occupied positions requiring professional qualifications in the past, and that his current position entails the exercise of supervisory authority over professionals. These constitute evidence that he has achieved professional standing. *See, e.g., Globenet, supra,* slip op. at pp. 7, 8 n. 7.

The plaintiff's submissions constitute substantial evidence that Walker is a "member of the professions" for purposes of the instant visa petition. Defendant has failed to present any significant evidence to counter these submissions or undermine the conclusion they impel. Given these facts, the agency may not "simply disregard the fact that the only evidence in the record is contrary to its bald assertions." *See, e.g., Globenet, supra,* slip op. at p. 19 n. 18. I find that plaintiff's position that Walker is a "member of the professions" is supported by substantial evidence, and that the agency's contrary conclusion was based on an erroneous interpretation of the law.

As there is substantial evidence in the record to support the plaintiff's position, and defendant's decision was based on an erroneous interpretation of the law, I hold that the visa petition should be granted. As previously noted, there is no other obstacle to the issuance of the requested visa, since Walker's application was filed before the current preference date.

Accordingly, plaintiff's motion for summary judgment is ALLOWED and defendant's motion is DENIED. An order consistent with this decision is being issued contemporaneously herewith.

### DECLARATORY JUDGMENT AND ORDER

#### April 12, 1989

In accordance with the memorandum filed herewith, it is adjudged that Kevin C.

Walker is a member of the professions within the meaning of 8 U.S.C. §§ 1101(a)(32) and 1153(a)(3). The defendant is ordered to issue a third preference visa to the said Kevin C. Walker.