**SHANTI, INC., d/b/a Moghals Fine Indian Cuisine Restaurant, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States, and Natalie Vedder, Director United States Immigration & Naturalization Service (INS), Northern Service Center, Defendants.**

No. Civ. 97–2777 (MJD/AJB).

United States District Court,
D. Minnesota.

Feb. 16, 1999.

Herbert A. Igbanugo, Hassan & Reed, Minneapolis, MN, for plaintiff.

Friedrich A.P. Siekert, Assistant U.S. Attorney, Minneapolis, MN, for defendants.

## ORDER

DAVIS, District Judge.

This matter is before the Court on the motion of Plaintiff Shanti, Inc. ("Shanti"), d/b/a Moghals Fine Indian Cuisine Restaurant ("Moghals"), for summary judgment and Defendants' cross motion for summary judgment and motion to dismiss for lack of subject matter jurisdiction. Plaintiff seeks declaratory judgment and injunctive relief from the decision of the Immigration and Naturalization Service ("INS") and the INS Administrative Appeals Unit ("AAU") denying its petition to classify Nancy James ("James") as a nonimmigrant temporary worker and accord her H–1B status under the Immigration and Nationality Act § 101(a)(15)(H)(i)(b) ("INA"), 8 U.S.C. § 1101(a)(15)(H)(i)(b). Shanti asks this court to void the denial of H–1B status to James and compel the INS to approve Shanti's petition.

## BACKGROUND

### I. Legal Standards for H–1B Status

8 U.S.C. § 1101(a)(15)(H)(i)(b) provides for the temporary admission of a nonimmigrant alien:

> to perform services ... in a specialty occupation described in section 1184(i)(1) of this title ... who meets the requirements for the occupation specified in section 1184(i)(2) of this title ... and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) of this title.

8 C.F.R. § 214.2(h)(4)(i)(A)(1) provides that an H–1B classification may be granted to an alien who:

> [w]ill perform services in a specialty occupation which requires theoretical and practical application of a body of highly specialized knowledge and attainment of a baccalaureate or higher degree or its equivalent as a minimum requirement for entry into the occupation in the United States, and who is qualified to perform services in the specialty occupation because he or she has attained a baccalaureate or higher degree or its equivalent in the specialty occupation.

To qualify for a nonimmigrant H–1B visa, an alien must satisfy a two-prong test: (1) the position that the alien seeks to occupy must qualify as a "specialty occupation"; and (2) the alien must herself be qualified to perform services in said occupation. *See, e.g., Augat, Inc. v. Tabor,* 719 F.Supp. 1158, 1160 (D.Mass.1989); *Globenet, Inc. v. Attorney General,* 1989 WL 132041 at *2

(D.D.C.1989). The alien beneficiary and the employer petitioner bear the burden of proof in an administrative proceeding to determine whether the alien and the employer petitioner satisfy the two-prong test. *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa ... the burden of proof shall be upon such person to establish that he is eligible to receive a visa").

### A. The Specialty Occupation

8 U.S.C. § 1184(i)(1) and (2) define a "specialty occupation" as requiring:

(1)(A) theoretical and practical application of a body of highly specialized knowledge, and

(1)(B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States,

(2)(A) full state licensure to practice in the occupation, if such licensure is required to practice in the occupation,

(2)(B) completion of the degree described in paragraph (1)(B) for the occupation, or

(2)(C)(i) experience in the specialty equivalent to the completion of such degree, and (ii) recognition of expertise in the specialty through progressively responsible positions relating to the specialty.

Similarly, 8 C.F.R. § 214.2(h)(4)(ii) provides that:

Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

The list of professions included in 8 C.F.R. § 214.2(h)(4)(ii) is not exhaustive, *see, e.g., Matter of Chu,* 11 I. & N.Dec. 881, 882 (1966); *Augat,* 719 F.Supp. at 1160; *Omni Packaging, Inc. v. INS,* 733 F.Supp. 500, 502 (D.Puerto Rico 1990); *Matter of Shin,* 11 I. & N.Dec. 686, 687 (1966), and accordingly, the INS has developed criteria by which to determine whether a non-enumerated occupation qualifies as a specialty occupation. The INS criteria are set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A), which establishes four standards, one of which an occupation must meet to qualify as a specialty occupation:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) the degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex of unique that it can be performed only by an individual with a degree;

(3) the employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

■ Thus, to determine whether an occupation qualifies as a specialty occupation, the INS will examine "whether there is a general requirement of specialized study for the post, coupled with whether the position has complex and discretionary duties normally associated with professional posts." *Augat,* 719 F.Supp. at 1161 (citing *Matter of Perez,* 12 I. & N. Dec. 701, 702, 1968 WL 14089 (1968); *Mindsey v. Ilchert,* No. C–84–6199–SC (N.D.Cal. Dec. 11, 1987); *Matter of Sun,* 12 I. & N. Dec. 535, 1966 WL 14402 (1967)).

### B. The Alien Beneficiary

8 C.F.R. § 214.2(h)(4)(iii)(C) sets forth four criteria to determine whether the beneficiary of a petition for H–1B status is qualified to perform services in a specialty occupation under 8 U.S.C. § 1184(i)(1) and (2). An alien must fulfill one of the four criteria:

(1) Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;

(2) Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the

specialty occupation from an accredited college or university;

(3) Hold an unrestricted State license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or

(4) Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

8 C.F.R. § 214.2(h)(4)(iv) also provides that a petition for H1–B classification in a specialty occupation shall be accompanied by:

[d]ocuments, certifications, affidavits, declarations, degrees, diplomas, writings, reviews, or any other required evidence sufficient to establish that the beneficiary is qualified to perform services in a specialty occupation.

 Accordingly, as both the INS and federal courts have noted, "a degree is not necessary" for an alien to qualify to perform services in a specialty occupation; "what is necessary is education and knowledge equal to a baccalaureate level of education." *Globenet,* 1989 WL 132041 at *2; *see also, Hong Kong T.V. Video Program, Inc. v. Ilchert,* 685 F.Supp. 712, 716 (N.D.Cal.1988); *Augat,* 719 F.Supp. at 1160–61; *Matter of Sun,* 12 I. & N.Dec. 535.

## II. Shanti's Petition

In January 1996, Shanti, d/b/a/ Moghals Fine Indian Cuisine Restaurant, Inc. ("Moghals"), filed a Form I–129, Petition for Nonimmigrant Worker, with the Nebraska Service Center of the INS to classify James, a citizen of Bangladesh, as a nonimmigrant temporary worker under INA § 101(a)(15)(H)(i)(b), 8 U.S.C. § 1101(a)(15)(H)(i)(b) to perform services as restaurant manager. Moghals is a restaurant engaged in the market of fine dining, with fourteen employees and an asserted gross annual income of $185,000. *See* AU decision at 2. The duties involved in the role of restaurant manager at Moghals, as set forth by Petitioner, include: (1) "ensuring the efficient and profitable operation of the restaurant, including establishing standards for personnel administration and performance, advertising, publicity, food selection, wine selection, service and dining room planning, bar and banquet operations;" (2) making financial decisions regarding allocation of funds, authorization of expenditures, and budgetary planning; (3) delegating the duty of hiring and firing employees; (4) directing "all aspects of operations including cost estimates dealing with food suppliers, purchasing, security maintenance and general supervision;" (5) ensuring "consistent quality in food preparation and service" by recruiting, training, and supervising workers; (6) keeping records of employee hours and wages, preparing payroll, and ensuring compliance with licensing, tax, wage and hour, unemployment compensation, and social security laws; (7) maintaining records of the cost of supplies and equipment and ensuring regular payment of all accounts. Pl.Mem. Opp.Summ.J. at 15–16; AAU decision at 5.

Pursuant to 8 C.F.R. § 214.2(h)(4)(iv), Petitioner presented the INS Service Center and the AAU with evidence to substantiate its claim that James meets the fourth criterion set forth in 8 C.F.R. § 214.2(h)(4)(iii)(C) for establishing eligibility as a beneficiary qualified to perform services in a specialty occupation. In support of its petition, Shanti submitted: letters of reference from James' former employers—KHK Scaffolding & Formwork Limited, Renardet Consulting Engineers, and Lucky–Goldstar International Corp.; James's certificate of completion of Word Processing Training from the Computer Training Institute of Dhaka; James's certificate of completion of the Secretarial Science Course from the Young Women's Christian Association of Dhaka ("YWCA"); a copy of James' diploma certifying her receipt of a Bachelor of Arts degree from the University of Dhaka; James' curriculum vitae; and a professional credentials evaluation of K. Davis Hirschey of Personnel Management, Inc., consultant in human resources leadership. The Hirschey evaluation asserts that James' foreign education and experience are equivalent "in quantity and quality" to a bachelor's degree in the U.S. *See* Administrative Record ("AR") Defendants' Exhibit

at 125. The Hirschey report states in relevant part that:

> Ms. James successfully completed several programs of study resulting in a Bachelor of Arts degree [in economics] from Tejgoan College, at the University of Dhaka in Bangladesh. Her educational background, continuing instructional course work and subsequent diploma have technically prepared her for a variety of positions in many traditional business professions ...
>
> Ms. James has held positions of increasing responsibility in various aspects of business management. The experiences included exposure to domestic and international service markets and involved general administrative duties along with specific budgetary, finance reporting, and control responsibilities ...
>
> Given Ms. James' 10 plus years of experience in the service industry and particularly the Finance and Control functions, coupled with her Diploma and Bachelor of Art's [sic] Degree, she would qualify as having the appropriate equivalent United States experience for a Bachelor's Degree.

AR Defendant's Exhibit at 124–125.

The Hirschey report also implicitly asserts that the position of restaurant manager is a specialty occupation, ordinarily requiring a bachelor's degree in business management, stating in relevant part that:

> Given the documentation and facts surrounding the Moghals Restaurant and Ms. James' relationship, I find your client's case credible ...
>
> Ms. James' anticipated rate of compensation, $38,000 per annum, in addition to benefits is competitive to slightly higher than rates being paid experienced. U.S. college graduates with Bachelor's Degrees pursuing hospitality or restaurant industry careers. The stature and responsibilities afforded Ms. James by her potential employer further attest to the significance of her background and experience with re-

gard to a professional in the business management field.

AR Defendants' Exhibit at 125.

To support further its assertion that the position of restaurant manager at Moghals is a specialty occupation, Shanti offered a letter written by Mohammed Azad Alam, president and owner of Moghals Fine Indian Cuisine Restaurant, Inc. and secretary of Shanti, Inc., stating that "[g]iven the level of these responsibilities [for the available position of restaurant manager at Moghals], we will ordinarily expect an applicant to have at least a Bachelors Degree in Business Administration or a related subject." AR Defendants' Exhibit at 118, 130. Shanti also submits excerpts from the Department of Labor *Occupational Outlook Handbook, 1994–1995* ("*Handbook*") which provide that:

> most food service management companies and national or regional restaurant chains also recruit management trainees from among the graduates of 2–year and 4–year college programs. Food service and restaurant chains prefer to hire persons with degrees in restaurant and institutional food service management, but they often hire graduates with degrees in other fields who have demonstrated interest and aptitude.

*Handbook* at 69; AR Defendants' Exhibit at 105.

On April 2, 1996, the NSC Director denied Shanti's petition, determining that Shanti failed to meet any of the four criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(C) and thus failed to prove that the position of restaurant manager qualified as a specialty occupation. The NSC Director determined that the Department of Labor *Handbook* "demonstrates that a college degree in the food service industry is a preference and not a requirement to be a restaurant manager [and] that [while] a bachelor's degree is desirable, ... it is not a necessity to be a restaurant manager." NSC Director decision at 95.[1] The Director further found that Shanti also failed to demonstrate that the duties of the post at issue are so complex,

---

**1.** The Director noted that the paragraph immediately prior to that cited by Petitioner states that "[m]any restaurant and food service manager positions are filled by promoting experienced

food and beverage preparation and service workers." NSC Director decision at 3 (citing *Handbook* at 69).

unique, and distinct from other restaurant management positions that a restaurant manager at Moghals requires a specialized baccalaureate degree, despite lack of a common industry standard requiring such higher education. NSC Director decision at 4.

Shanti appealed the decision to the AAU, which dismissed Shanti's appeal on July 14, 1997. The AAU agreed that the position of restaurant manager did not require a specific degree in business administration and was therefore not a specialty occupation and further held that James was not qualified to perform services in a specialty occupation. The AAU found that:

> a degree in business administration alone is insufficient to qualify the holder as a member of the professions or a specialty occupation unless the academic courses pursued and the knowledge gained are realistic prerequisites to a particular occupation within the broad field of business administration and unless that person is engaged, or intends to engage, in that occupation.

AAU decision at 3. The AAU determined that the course work completed by James for receipt of her bachelor of arts degree from the University of Dhaka, her Certificate in Word Processing from the Computer Training Institute of Dhaka, and her Certificate in Secretarial Science from the Young Women's Christian Association of Dhaka ("YMCA") did not constitute specialization in a specific field of study, precluding James from fulfilling the 8 C.F.R. § 214.2(h)(4)(iii)(C) requirements based on her educational experience alone. The AAU then looked to James' work experience and determined that eleven years of employment—as first a secretary and later a credit controller with KHK Scaffolding, an administrative assistant with Lucky Goldstar International, Corp., and a secretary with Renardet, S.A.—failed to constitute experience directly related to a specialty occupation. AAU decision at 4. Accordingly, the AAU found that James' employment experience was insufficient to overcome her lack of a degree in a specific and specialized area of business administration and that, as James did not possess a bachelor's degree from the U.S. or an equivalent foreign degree nor a state license, registration, or certification authorizing her practice in a specialty occupa-

tion as required by criteria one, two, and three of 8 C.F.R. § 214.2(h)(4)(iii)(C), she was not qualified to perform services in a specialty occupation.

## DISCUSSION

### I. Jurisdiction

As a threshold matter, this Court must determine whether it has subject matter jurisdiction to hear the instant case. Defendants assert that this Court has been stripped of jurisdiction over the present matter by the promulgation of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 ("IIRIRA") on September 30, 1996, amending the Immigration and Nationality Act ("INA") to substantially restrict the federal courts' power of judicial review over INS decisions. Specifically, Defendants cite IIRIRA §§ 306 and 381(a), amending 8 U.S.C. §§ 1252 and 1329 respectively, as provisions that deny this Court the power of judicial review over the denial of a nonimmigrant H–1B visa. Petitioner asserts that despite the IIRIRA provisions cited by Defendants, this Court has jurisdiction to review the agency action at issue pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the general grant of federal question jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.* ("APA").

### A. 8 U.S.C. § 1252

■ IIRIRA § 306 repealed INA § 106, 8 U.S.C. § 1105(a), which provided the exclusive procedures for judicial review of final orders of deportation and established that an alien in custody pursuant to an order of deportation could obtain judicial review through habeas corpus proceedings. IIRIRA § 306 replaced 8 U.S.C. § 1105(a) with INA § 242, 8 U.S.C. § 1252, entitled "Judicial review of orders of removal."

Defendants argue that, as amended, 8 U.S.C. § 1252 precludes judicial review of the denial of an alien's petition for an H–1B nonimmigrant visa. The relevant provisions of 8 U.S.C. § 1252, potentially limiting this Court's power of judicial review, are 8 U.S.C. § 1252(g) and (a)(2)(B)(ii).

8 U.S.C. § 1252(g), entitled "Exclusive jurisdiction," establishes that:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(a)(2)(B)(ii), entitled "Denials of discretionary relief," provides that:

Notwithstanding any other provision of law, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title [Title 8. Aliens and Nationality], or (ii) any other decision or action of the Attorney General the authority for which is specified under this chapter [Chapter 12–Immigration and Nationality] to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

As noted above, both 8 U.S.C. § 1252(a)(2)(B)(ii) and (g) are subsections of § 1252, entitled "Judicial review of orders of removal." Thus, the terms set forth in subsections (a)(2)(B)(ii) and (g), unless otherwise explicitly specified, are inherently limited in applicability to review of removal orders. *See Dominance Industries, Inc., et al. v. INS, et al.,* 1998 WL 874904 (N.D.Tex.).[2] The legislative history of IIRIRA similarly suggests that the provisions § 1252 are confined in scope to orders of removal, summarizing the effect of IIRIRA § 306, amending § 1252, by observing in Title III, Subtitle A, entitled, "Apprehension and Removal of Illegal Aliens: Reform of Removal Procedures," that:

Section 306 preserves the right to appeal from a final administrative order of removal ... to one of the Federal circuit courts of appeals ... Section 306 also limits the authority of Federal courts other than the supreme Court to enjoin the operation of the new removal procedures established in this legislation.

H.Rep. No. 104–469(*l*), 104th Cong., 2d Sess. 359, 473. Significantly, the legislative history of IIRIRA § 306 does not refer to visa petitions nor any other procedures outside the purview of removal proceedings. Similarly, the language employed by IIRIRA § 306(c)(1) to establish the effective date of § 1252(g) provides that § 1252(g) shall apply "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act," thereby implicitly limiting the scope of § 1252(g) to exclusion, deportation or removal proceedings. *See Dominance Industries, Inc.,* 1998 WL 874904 at *2.

■ Removal proceedings are defined in INA § 240, 8 U.S.C. § 1229a(a)(1) as "proceedings for deciding the inadmissibility or deportability of an alien." The disposition of a visa petition has been held to be a collateral issue not within the scope of deportation, removal, or exclusion proceedings. *See, e.g., Hassan v. INS,* 110 F.3d 490, 494 (7th Cir. 1997); *Pritchett v. INS,* 993 F.2d 80, 82 (5th Cir.1993); *Conti v. INS,* 780 F.2d 698, 702 (7th Cir.1985); *Elbez v. INS,* 767 F.2d 1313, 1314 (9th Cir.1985); *Dastmalchi v. INS,* 660 F.2d 880, 891 (3rd Cir.1981). The denial of the H–1B nonimmigrant visa at issue in this case is therefore a collateral issue outside the scope of removal proceedings and consequently also outside the reach of the provisions limiting judicial review set forth in 8 U.S.C. § 1252, "Judicial review of orders of removal." *See, Dominance Industries, Inc.,* 1998 WL 874904 at *2; *Abboud v. INS,* 140 F.3d 843, 846–47 (9th Cir.1998) (finding that a district court has jurisdiction over a challenge to an INS denial of an immigrant visa petition); *Le v. INS,* 1998 WL 556579 at *2 (N.D.Cal.).[3]

---

**2.** This argument was raised by Plaintiffs in *Bains v. Schiltgen,* 1998 WL 204977 at *4 (N.D.Cal.) seeking review of the INS's denial of an adjustment of status petition. The court found that Plaintiff's adjustment of status petition was part of removal proceedings and therefore found it "unnecessary to decide whether § 1252(a)(2)(B) applies to all adjustment of status petitions" or solely those made in the context of removal.

**3.** By extension, the jurisdictional limitations set forth in § 1252(a)(2)(B)(i) that preclude judicial review of INS decisions made pursuant to § 1182(h) (waiver of inadmissibility for criminal and related grounds), § 1182(i) (waiver of inadmissibility for fraud or willful misrepresentation of material fact); § 1229b (cancellation of removal); § 1229c (voluntary departure); § 1255

Accordingly, this Court finds that 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 U.S.C. § 1252(g) do not strip this Court of jurisdiction to review the denial of the H–1B nonimmigrant visa at issue in this case.

### B. 8 U.S.C. § 1329

Defendants argue that even if judicial review is not precluded by 8 U.S.C. § 1252, this Court is barred from exercising jurisdiction by 8 U.S.C. § 1329 as amended by IIRIRA § 381(a). Prior to the enactment of IIRIRA, 8 U.S.C. § 1329 provided that, "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, rising under any of the provisions of this subchapter [Subchapter II–Immigration]." As amended, 8 U.S.C. § 1329 states in relevant part:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter ... Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers.

■ Well-established canons of statutory interpretation disfavor repeal of jurisdictional provisions by implication and require that restrictions on jurisdiction be construed narrowly. *Goncalves v. Reno*, 144 F.3d 110, 122 (1st Cir.1998); *Felker v. Turpin*, 518 U.S. 651, 659–63, 116 S.Ct. 2333, 2338–39, 135 L.Ed.2d 827 (1996); *McNary v. Haitian Refugee Center, Inc., et al.*, 498 U.S. 479, 484, 111 S.Ct. 888, 892, 112 L.Ed.2d 1005 (1991); *see also Perez v.. Reno*, 18 F.Supp.2d 674, 677 (W.D.Tex.1998).

■■ This Court agrees with Defendants that 8 U.S.C. § 1329, as amended by IIRIRA, no longer provides a basis for jurisdiction over actions, such as the present, against officers of the United States. *See, e.g., Zheng v. McElroy*, 1998 WL 702318 at *4 (S.D.N.Y.); *Bains v. Schiltgen*, 1998 WL 204977 at *4 (N.D.Cal.); Def.Exh. C, *Sabhari v. Reno*, Civ. 97–1534 (D.Minn.1998). Nonetheless, while 8 U.S.C. § 1329 no longer confers jurisdiction on this Court, 8 U.S.C. § 1329 fails to expressly preclude this Court from finding alternative nonstatutory bases

for subject matter jurisdiction. To the contrary, the relevant language of 8 U.S.C. § 1329 is notably distinct from and can be contrasted to the language employed by other sections of 8 U.S.C. Chapter 12 that attempt to eliminate all alternative statutory and nonstatutory jurisdictional bases for judicial review of matters arising thereunder. *See, e.g.,* 8 U.S.C. § 1252(a)(2)(B) ("[n]ot withstanding any other provision of law, no court shall have jurisdiction to review"); 8 U.S.C. § 1252(g) ("[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim."). Absent the explicitly limiting language employed by 8 U.S.C. Chapter 12 provisions such as § 1252(a)(2)(B) and § 1252(g), 8 U.S.C. § 1329 does not deprive this Court of general federal question jurisdiction under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

■ Nonetheless, 28 U.S.C. § 1331 does not create any substantive right against the United States for monetary damages, *see United States v. Testan*, 424 U.S. 392, 400–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976); *United States v. Perry*, 706 F.2d 278, 279 (8th Cir.1983); *Hagemeier v. Block*, 806 F.2d 197, 203 (8th Cir.1986). 28 U.S.C. § 1331 does, however, provide jurisdiction for equitable relief sought from federal administrative action, such as that sought in the present case, provided there exists a separate and independent statutory waiver of sovereign immunity. *See Collyard v. Washington Capitals*, 477 F.Supp. 1247, 1252 (D.Minn.1979); *Warin v. Director, Department of the Treasury*, 672 F.2d 590, 591–92 (6th Cir.1982); *Jaffee v. United States*, 592 F.2d 712, 718–19 (3d Cir.1979); *Rosebud Sioux Tribe v. U.S. Bureau of Indian Affairs*, 714 F.Supp. 1546, 1554 (C.D.S.D.1989) (citing *Sprecher v. Graber*, 716 F.2d 968, 973–74 (2d Cir.1983)).

While the APA does not provide an independent basis for subject matter jurisdiction, permitting federal judicial review of agency decisions, *see Califano v. Sanders*, 430 U.S.

(adjustment of status) are also applicable only in the context of removal proceedings.

99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977); *Bruce v. United States,* 621 F.2d 914, 918 (8th Cir.1980); *Redman v. FAA,* 759 F.Supp. 1384, 1387 (D.Minn.1991), courts have held that the APA provides the requisite waiver of sovereign immunity for equitable actions brought under section 1331. 5 U.S.C. § 702.

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action.

*Id.*

■ There exists a strong presumption under the APA in favor of interpreting statutes to allow judicial review of final administrative action for which there is no other adequate remedy in court, *see* 5 U.S.C. § 704, unless: "(1) the statute[ ] precludes judicial review; or (2) the agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(1), (2); *see also, Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Califano,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192; *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967); *McNary,* 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005; *Felker,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827; *State of North Dakota ex. rel. Board of University and School Lands v. Yeutter,* 914 F.2d 1031 (8th Cir.1990). Thus, to determine whether 5 U.S.C. § 702 can serve as a waiver to the defense of sovereign immunity for claims arising under 28 U.S.C. § 1331, this Court must determine whether the conditions set forth in 5 U.S.C. § 701(a)(1), (2) and 702 preclude application of the waiver in the present case.

As previously explicated, this Court has concluded that neither 8 U.S.C. § 1252 nor § 1329 prevents judicial review of the denial

of the H–1B nonimmigrant visa presently at issue or precludes the relief sought by Plaintiff in this case. The determinative factor, therefore, is whether the agency action in question is "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2).

This exception to judicial review set forth in 5 U.S.C. § 701(a)(2) is a "very narrow" one and "is applicable only in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.' S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)." *Chaney,* 470 U.S. at 830, 105 S.Ct. at 1655 (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820–21, 28 L.Ed.2d 136 (1971)); *see also Webster v. Doe,* 486 U.S. 592, 599–601, 108 S.Ct. 2047, 2051–53, 100 L.Ed.2d 632 (1988); *Yeutter,* 914 F.2d at 1034–35; *see also, Chang v. Reno,* 986 F.Supp. 19, 24 (D.D.C.1997). Thus, 5 U.S.C. § 701(a)(2) precludes judicial review only in cases in which there are "no judicially manageable standards," making it "impossible to evaluate agency action for 'abuse of discretion.' " *Id.* The determination of whether action is "committed to agency discretion" under the APA therefore turns on a "careful examination of the statute on which the claim of agency illegality is based." *Yeutter,* 914 F.2d at 1034 (citing *Webster,* 486 U .S. at 600, 108 S.Ct. at 2052).

Accordingly, this Court looks to the relevant statutes in the present case to determine whether the denial of an H–1B nonimmigrant visa is committed to agency discretion and therefore unreviewable by this Court—8 U.S.C. § 1101(a)(15)(H)(i)(b) and § 1184(i)(1), (2). 8 U.S.C. § 1101(a)(15)(H)(i)(b) provides that an alien coming temporarily to the United States to perform services in a specialty occupation, as defined by section 1184(i)(1), is a nonimmigrant alien. As set forth above, § 1184(i)(1), (2) and 8 C.F.R. § 214.2 establish explicit criteria, which, if fulfilled, qualify an occupation as a "specialty occupation" and an alien beneficiary for nonimmigrant H–1B status. When evaluating a petition for an H–1B nonimmigrant visa, the INS is bound by 8 U.S.C. § 1184(a)(1) to follow the statutory regulations estab-

lished in 8 C.F.R. § 214.2, as "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." 8 U.S.C. § 1184(a)(1). The Attorney General's treatment of alien petitions for nonimmigrant H–1B status is therefore governed by regulations and can be distinguished from her treatment of other matters under 8 U.S.C. Chapter 12 committed solely to her discretion. *See, e.g.,* 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application" of the enumerated subparagraphs); 8 U.S.C. §§ 1154(a)(1)(H), 1229b(b)(2)(E) ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General"); 8 U.S.C. § 1227(a)(1)(E)(iii) ("The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i)"); 8 U.S.C. § 1225(b)(1)(A)(iii)(*l* ) ("The Attorney General *may* apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time") (emphasis added).

■ Accordingly, this Court concludes that a determination regarding a petition for a nonimmigrant H–1B visa is not "committed to agency discretion by law," and that the INA provides "judicially manageable standards," which have been repeatedly used by courts to evaluate agency action for abuse of discretion in granting or denying petitions for a nonimmigrant H–1B visa. *See, e.g., Dominance Industries, Inc., et al. v. INS, et al.,* 1998 WL 874904; *All Aboard Worldwide Couriers, Inc. v. Attorney General,* 8 F.Supp.2d 379 (S.D.N.Y.1998); *Mercy Catholic Medical Center v. Reno,* 1994 WL 698293 (E.D.Pa.1994); *Young China Daily v. Chappell,* 742 F.Supp. 552 (N.D.Cal.1989); *Central Indonesian Trading Company v. INS,* 1990

WL 161020 (S.D.N.Y.); *Bodeux v. INS,* 668 F.Supp. 1452 (D.Kan.1987); *Occidental Engineering Company v. INS,* 753 F.2d 766 (9th Cir.1985). Therefore, APA § 701 is applicable to the present matter and provides a waiver to the defense of sovereign immunity in the instant case.

This Court therefore concludes that 8 U.S.C. § 1329 does not strip district courts of the power of judicial review of the denial of an H–1B nonimmigrant visa and that this Court has jurisdiction to review the present matter under 28 U.S.C. § 1331 and the Administrative Procedures Act. This Court also finds jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201,[4] which provides an additional remedy where a court has an otherwise valid jurisdictional basis to consider a matter. *See Skelly Oil Co., et al. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–879, 94 L.Ed. 1194 (1950). Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## II. *Visa Petition*

### A. *Summary Judgment Standard*

Summary judgment is appropriate if the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219–20 (8th Cir.1992); *Aucutt v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th Cir. 1996).

### B. *Standard of Review*

■ The reviewing court will not set aside agency action denying an alien's visa petition unless the action is found to be "arbitrary, capricious, an abuse of discretion, or

---

4. 28 U.S.C. § 2201(a) provides in relevant part that "any court of the United States, upon the filing of an appropriate pleading, may declare

the rights and other legal relations of any interested party seeking such declaration."

otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An abuse of discretion will be found only if the decision is unsupported by substantial evidence or based upon an improper understanding of the law. *Ijoma v. INS*, 875 F.Supp. 625, 628 (D.Neb. 1995) (citation omitted); *Occidental Engineering Co. v. INS*, 753 F.2d 766, 768 (9th Cir.1985) (citation omitted); *Young v. Reno*, 114 F.3d 879, 883 (9th Cir.1997); *Augat,*, 719 F.Supp. at 1160; *Hong Kong T.V.*, 685 F.Supp. at 715; *Globenet,* 1989 WL 132041 at *1.

■ Interpreting the APA's "abuse of discretion" standard, courts have found that the INS "abuses its discretion by making decisions without rational explanation, departing inexplicably from established policies, or discriminating invidiously against a particular race or group." *Rodriguez–Rivera v. INS*, 993 F.2d 169, 170 (8th Cir.1993) (per curiam) (citing *Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir.1991)); *Hajiani–Niroumand v. INS*, 26 F.3d 832, 835 (8th Cir.1994); *see also Hird/Blaker Corporation v. Slattery*, 764 F.Supp. 872, 874–75 (S.D.N.Y.1991) ("an abuse of discretion is shown only if the plaintiff establishes that the decision under review was made without rational explanation, inexplicably departed from established authorities, or rested on an impermissible basis") (citing *Li Cheung v. Esperdy*, 377 F.2d 819, 820 (2d Cir.1967) (citation omitted)).

■ Consistent with the principle that an agency abuses its discretion by inexplicably departing from established policy, courts have determined that "when the agency makes a decision which is inconsistent with the agency's own precedent, this may constitute an abuse of discretion." *Augat, Inc.*, 719 F.Supp. at 1160 (citing *Occidental,* 753 F.2d at 769; *Globenet,* 1989 WL 132041). An agency also abuses its discretion when it fails to follow its own regulations. *See Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir.1990); *Suciu v. INS*, 755 F.2d 127, 129 (8th Cir.1985) ("certainly agencies of the federal government, once they have laid down procedures by regulation, are bound to follow them"); *Moret v. Karn*, 746 F.2d 989, 992 (3d Cir.1984); *Shepherd v. Merit Systems Protection Board*, 652 F.2d 1040 (D.C.Cir.1981). An agency's interpretation of its regulations, however, is accorded substantial deference and is controlling "unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Bodeux,* 668 F.Supp. 1452 (citing *City of Aurora v. Hunt*, 749 F.2d 1457, 1461–62 (10th Cir. 1984)) (overruled on other grounds).

Accordingly, this Court examines the INS denial of an H–1B visa to James under the above-articulated abuse of discretion standard.

*C. Beneficiary Qualifications*

■ As set forth above, the AAU determined that Shanti was unable to demonstrate that James' education and employment experience constituted the equivalent of a bachelor's degree in a specialized area, as required for fulfillment of criterion four of 8 C.F.R. § 214.2(h)(4)(iii)(C), and as James did not meet any of the other three criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(C), the AAU found that she was not qualified to perform services in a specialty occupation.

The INS has frequently held that a general degree, such as that in business administration, absent specialized experience, is insufficient to qualify an alien beneficiary as a "member of the professions." *See Matter of Ling*, 13 I. & N. Dec. 35, 37 ("a petitioner with a business administration degree must clearly establish a particular area and occupation in the field of business administration in which he is engaged or plans to be engaged and must also establish that he meets the special academic and experience requirements of that designated activity, as a prerequisite to a determination as to professional status."); *Matter of Shin*, 11 I. & N. Dec. at 688 ("The mere acquisition of a degree or equivalent experience does not, of itself, qualify a person as a member of a 'profession.' The knowledge acquired must also be of nature that is a realistic prerequisite to entry into the particular field of endeavor."); *see also, Hird/Blaker Corporation v. Slattery*, 764 F.Supp. at 875. Furthermore, the INS has explicitly rejected suggestions of derogation of the requirement that an alien beneficiary possess a baccalaureate degree or its

equivalent in a *"specific* occupational specialty"* (emphasis added), stating that the elimination of the term "specific" "would mean that any field in which a college or university grants a degree would become a profession ... [T]he Service does not believe that Congress ever intended such a broad interpretation of the term 'profession.' ... The Service is opposed to such a broad interpretation and has no legal basis for making such a change." 55 Fed.Reg. 2606, 2609 (Jan. 26, 1990). In an unpublished decision addressing the INS denial of an H–1B visa for the position of restaurant manager, the Sixth Circuit similarly upheld an INS decision that found a general degree in business administration, absent specific relevant experience, insufficient to render the alien a "member of the professions." *China Chef, Inc. v. Puelo*, 12 F.3d 211, 1993 WL 524276 (6th Cir.1993). The court in *China Chef* distinguished *Matter of Sun*, 12 I. & N. Dec. 535, 1966 WL 14402 (Dist.Dir.1966), in which an alien beneficiary seeking H–1B status for employment as a hotel manager was deemed a member of the professions, by noting that, while the beneficiary in *China Chef* "possesses only a general degree in business administration and has apparently never worked in a restaurant before," *China Chef*, 1993 WL 524276 at *1, the alien in *Matter of Sun* had a *"specialized degree* in hotel management and ... three years of experience in that field." *China Chef*, 1993 WL 524276 at *1 (emphasis added). Like the alien beneficiary in *China Chef*, James arguably possesses a degree in business administration and has no previous experience in the field of restaurant management.

The Court notes that the above-cited authority, however, addresses petitions for H–1B nonimmigrant visas filed with the INS under 8 U.S.C. § 1101(a)(15)(H)(i) prior to passage of the Immigration Act of 1990, Public Law No. 101–649, on November 29, 1990. Prior to its 1990 amendment, 8 U.S.C. § 1101(a)(15)(H)(i) provided that "an alien having residence in a foreign country which

he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability" was classified as an H–1 nonimmigrant. *See also* 8 C.F.R. § 214.2(h)(1)(ii)(A). 8 C.F.R. § 214.2(h)(4)(i)(A) defined an "alien of distinguished merit and ability" as "one who is a member of the professions or who is prominent in his or her field," and 8 C.F.R. § 214.2(h)(4)(ii)(A) defined "profession" as:

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge to fully perform the occupation in such fields of human endeavor as: architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts. A profession requires completion of a specific course of education at an accredited college or university, culminating in a baccalaureate or higher degree in a specific occupational specialty, where attainment of such degree or its equivalent is the minimum requirement for entry into the profession in the United States. There are two categories of persons who do not meet these requirements but are nevertheless regarded as members of a profession. They are: persons who, after passage of normal professional tests and requirements, are granted full state licenses to practice the profession; and persons who lack the required degree but, by virtue of a combination of education, specialized training and/or professional experience are recognized as members of a profession and are in fact lawfully practicing at a professional level.

Significantly, the criteria presently set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A) to qualify an occupation as a "specialty occupation" and the standards for a position to qualify as a "profession" are substantially similar.[5] Furthermore, the criteria set forth by 8 C.F.R.

---

5. With the exception of inconsequential word substitutions, the sole distinction between the 8 C.F.R. § 214.2(h)(4)(iii)(A) prior to and subsequent to the 1990 amendments is that under the pre–1990 regulations, 8 C.F.R. § 214.2(h)(4)(iii)(A) set forth a fifth criterion for qualification as a profession not available for qualification as a specialty occupation, providing that a position whose "level of responsibility and authority are commensurate with professional standing may qualify as a profession."

§ 214.2(h)(4)(iii)(C) to determine whether an alien beneficiary seeking H–1B status is qualified to perform services in a specialty occupation and the standards for qualification as a member of the professions contain no legally significant differences.

In the present case, the AAU relies on *Matter of Ling, supra,* to support its denial of the visa at issue and explicitly distinguishes the instant visa petition from that filed in *Hong Kong T.V., supra, see* AAU decision at 3, 5–6; both cases were decided under 8 U.S.C. § 1101 prior to the 1990 amendments. After extensive discussion of *Matter of Ling* and *Hong Kong T.V.,* the AAU asserts that cases cited by petitioner decided under 8 U.S.C. § 1101 prior to the 1990 amendments "deal with the professional status of individuals or occupational positions. While the terms 'profession' and 'specialty occupation' are close in meaning, they are not synonymous. Counsel has not established the relevance of those decisions to this proceeding." AAU decision at 6. The AAU decision issued in the present case is therefore internally contradictory—both relying on and rejecting cases applying the "profession" standard in lieu of the current "specialty occupation" standard.

As set forth above, an agency's interpretation of its own regulations is accorded substantial deference and is controlling unless clearly erroneous or inconsistent with the regulations. *See supra.* This Court finds that the INS's significant reliance on and treatment of decisions reached under the pre–1990 laws belies its assertion that said decisions are inapposite to the present matter and, according the INS its due deference, finds that the INS's treatment of precedent developed under the "profession" standard as relevant to the interpretation of the "specialty occupation" standard is not clearly erroneous nor inconsistent with regulations. Nonetheless, this Court notes that the INS has applied a double standard to its treatment of the present matter—considering cases decided under the pre–1990 laws and regulations if favorable to its position and rejecting them as inapposite if presented by Petitioner; this Court finds such behavior by the INS repugnant and deplorable.

Accordingly, and in light of the above-described precedent, this Court determines

that the INS did not inexplicably depart from established policy or precedent nor demonstrate an improper understanding of the law when it held that a degree in business administration does not constitute a degree in a specialized field. The INS has also examined the employment experience presented by Petitioner and has set forth evidence and provided a rational explanation to substantiate its determination that James' education combined with subsequent employment experience is insufficient to fulfill the requirements set forth in 8 C.F.R. § 214.2(h)(4)(iii)(C). Furthermore, the INS' evaluation in the present case is consistent with past precedent, which states that "[a] combination of education and experience may be considered equivalent to a professional degree, but usually only when a substantial amount of specialized academic course work is combined with employment and training which are documented as conveying to the employee professional knowledge and competency." *Matter of Caron International,* 19 I. & N. Dec. 791 at 798–99; *see also Globenet,* 1989 WL 132041 at *4 (finding that "[c]ase law also accommodated those *rare* instances where individuals attain professional standing through *directed* experience and *specialized* noninstitutional instruction" (emphasis added) (citing *In re Matter of Portugues,* I.D. # 2982)). Thus, this Court finds that the INS did not abuse its discretion as to the determination regarding the alien beneficiary in the present case.

### D. Restaurant Manager as a Specialty Occupation

■ The AAU also affirmed the decision of the NSC Director that petitioner was unable to demonstrate that the position of restaurant manager fulfilled any of the criteria set forth in 8 C.F.R. § 214.2(h)(4)(iii)(A) required to qualify as a "specialty occupation."

The AAU found that the petitioner "has failed to show that 'similar firms require the services of such individuals in parallel positions.' " AAU decision at 5. Thus, the INS determined that Petitioner is unable to demonstrate that the degree requirement is an industry standard in parallel positions among similar firms. *See, e.g., Central Indonesian*

*Trading Company,* 1990 WL 161020 at *4; (citing *Matter of Caron Int'l, Inc.* 19 I. & N. Dec. 791); *Hird/Blaker,* 764 F.Supp. at 875; *Hong Kong T.V.,* 685 F.Supp. 712; *China Chef,* 1993 WL 524276 at *2.

In a letter dated February 8, 1996, the NSC Director requested the Petitioner submit documentation to show that "it is normal practice for similar firms to employ individuals with baccalaureate degrees in a specialized area in parallel positions." Factors often considered by the INS when determining industry standard include: whether the *Occupational Outlook Handbook* reports that the industry requires a degree, whether the industry's professional association has made a degree a minimum entry requirement, and letters or affidavits from firms or individuals in the industry testifying that such firms "routinely employ and recruit only degreed individuals." *Hird/Blaker,* 712 F.Supp. at 1102 (citations omitted). The record in the present case contains only excerpts from the *Handbook* —explicitly found by the INS as not supporting a finding that industry standard normally contemplates a degree requirement—and copies of two similar prior visa petitions approved by the INS, *see* AR at Defendants' Exhibit, 31–91, which the INS has found to have been "approved in error." AAU decision at 7. The Court therefore finds that the INS did not abuse its discretion in finding that Petitioner failed to fulfill the industry standard requirement under 8 C.F.R. § 214.2(h)(4)(iii)(A).

The Petitioner need not fulfill the industry standard requirement, however, if it can demonstrate that the position at issue meets other criteria enumerated in 8 C.F.R. § 214.2(h)(4)(iii)(A). Accordingly, the NSC Director, in her letter of February 8, 1996, requested that Petitioner submit: (1) "documentation such as job advertisements in newspapers, job descriptions, etc." to demonstrate that a baccalaureate degree or its equivalent is normally the minimum requirement for entry into the position of restaurant manager; and (2) "documentation to show that individuals with baccalaureate or higher degrees in a specialized area have been employed in the past," noting that "the employer's mere statement that a degree is required is not good enough." Despite sufficient opportunity, Petitioner failed to submit the requested information and instead relied on Moghals' assertion that a degree was required to fill its post of restaurant manager.

The INS then examined the specific duties of the position of restaurant manager at Moghals to determine whether they are so complex or unique that their performance requires an individual with a degree. The INS contrasted the present position and its enumerated duties with the post and duties at issue in *Hong Kong T.V.,* cited by Petitioner. In *Hong Kong T.V.,* the court held that the INS abused its discretion by finding that the position of president of the largest Asian language video cassette distributor in the U.S., with a gross annual income of approximately $10 million, was not a specialty occupation. *See* AAU decision at 5. The president in *Hong Kong T.V.* was responsible for the "direct oversight over [sic] 70 employees and over 700 sublicensees," *see* AAU decision at 5, and

> oversees monthly operating expenses of $150,000; controls a standard inventory of $500,000; is responsible for corporate, financial planning, marketing, and promotional strategy; negotiates contracts with United States licensees and Hong Kong HKTVB; supervises legal actions against video 'pirates'; works videotape anti-pirate technology; and makes high level decisions involving technical, legal and fiscal matters, capital improvements, and copyright infringement.

*Hong Kong T.V.,* 685 F.Supp. at 714; *see also* AAU decision at 5–6. The AAU concluded that "the petitioner has not shown that the beneficiary's proposed duties will be as extensive and complex as those of the beneficiary in *Hong Kong*." AAU decision at 6. In *China Chef,* the court found that "the INS acted reasonably in considering the size and scope of ... [the] business" and that "the skills required to be the manager of a small company are [not] necessarily the same as those required to be a manager at a large company." *China Chef,* 1993 WL 524276 at *2. Accordingly, although this Court may disagree that the duties required of restaurant manager at Moghals are not commensurate with duties of a "specialty occupation," the INS is not compelled to find that such

duties are "inherently specialized," complex or unique. *See All Aboard Worldwide,* 8 F.Supp.2d at 381. As the INS has evaluated the complexity of the duties at issue in the present case, considering relevant factors and past precedent, this Court finds that the INS has not abused its discretion in this regard.

Furthermore, the INS has consistently refused to hold that managerial positions require a "member of the professions" or qualify as "specialty occupations." *See, e.g. Matter of Caron International, Inc.,* 19 I. & N. Dec. at 794 (finding that "general managerial occupations ... are normally not considered to be professional endeavors requiring specific academic degrees"). In *China Chef,* the Sixth Circuit upheld a district court's determination that "an academic degree is not a minimum requirement for entry into that occupation [restaurant manager]" *China Chef,* 1993 WL 524276 at *1, and that "general manager positions are usually not considered 'professional' positions requiring a degree." *Id.* at *1. In addition, in the present case, the baccalaureate degree allegedly required for Shanti's position of restaurant manager is one in business administration. As discussed above, a specialty occupation "must require a degree that involves a 'precise and specific course of study which relates directly and closely to the position in question' (citation omitted). An occupation that requires a general degree such as business administration ... therefore, is not a 'profession'." *Hird/Blaker,* 764 F.Supp. at 875; *see also, Central Indonesian Trading Company* 1990 WL 161020 at *4.

The Court therefore finds that the INS did not abuse its discretion by denying Moghals' petition for an H–1B visa for the alien beneficiary, James.

The Court has reviewed the facts, files, records, and proceedings herein and has found genuine issues of material fact.

Accordingly, IT IS HEREBY ORDERED THAT:

Defendants' Motion to Dismiss be DENIED.

Plaintiff's Motion for Summary Judgment be DENIED.

Defendants' Motion for Summary Judgment be GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.